(No. 70371.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DAVID CRANE, Appellee.

*Opinion filed November 27, 1991.—Rehearing denied February 3, 1992.*

Roland W. Burris and Neil F. Hartigan, Attorneys General, of Springfield, and Paul A. Logli, State's Attorney, of Rockford (Robert J. Ruiz and Rosalyn B. Kaplan, Solicitors General, and Terence M. Madsen, Jack Donatelli and Steven J. Zick, Assistant Attorneys General, of Chicago, and Kenneth R. Boyle, William L. Browers and Lawrence M. Bauer, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

Daniel D. Yuhas, Deputy Defender, and Gloria A. Morris, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellee, and David Crane, of Joliet, appellee *pro se.*

JUSTICE HEIPLE delivered the opinion of the court:

Following a jury trial in the circuit court of Winnebago County, defendant, David Crane, was found guilty of the beating and burning murder of Robert Gahan, and sentenced to a 40-year term of imprisonment. Defendant appealed to the appellate court, which reversed and remanded defendant's conviction. (196 Ill. App. 3d 264.) We affirm the appellate court.

## FACTS

On April 21, 1986, Robert Gahan was killed by being beaten and burned. As a result of a police investigation, defendant was determined to be the prime suspect. Defendant was arrested by New Mexico police on December 23, 1986, on misdemeanor traffic charges, and, due to an Illinois parole violation and an outstanding warrant, he was held as a fugitive from justice. While being held in Las Cruces, New Mexico, defendant, on

January 7, 1987, was interviewed by Illinois Detectives Roger Costello and Larry Schultz.

Defendant told the Illinois detectives that Gahan gave him a ride while he was hitchhiking. Gahan asked defendant if he wanted to smoke marijuana, and defendant responded that he did. Defendant directed Gahan to a secluded area, and while they were smoking the marijuana, Gahan grabbed defendant by the neck and began to choke him. Defendant responded by repeatedly striking Gahan with numchucks (martial arts weapons) until he fell to the ground. Defendant, thinking that Gahan was dead, took Gahan's car to a friend's house, Brian Carlson, and related what had just occurred. At Carlson's suggestion, defendant decided to destroy the evidence by burning Gahan's body. Defendant poured gasoline over Gahan and lit him on fire. Defendant also stated that a few days later he heard that Gahan was alive at the time of the burning, and that upon hearing this news he started to cry. After giving his statement, defendant was asked to put it in writing. At this point defendant requested an attorney, and all questioning stopped.

Differing accounts were given by the detectives and defendant of the events which transpired during the interview which led up to defendant's statement. The detectives testified that they began interviewing defendant at approximately 8:30 a.m. Detective Costello read defendant his *Miranda* rights from a waiver card, and after being read each individual warning, defendant was asked if he understood it. Defendant did not respond to any of the warnings. After being read all of the warnings, defendant was asked if he understood each of them. Defendant responded by nodding his head in the affirmative. Defendant was then asked if he wished to talk to the detectives, and again defendant nodded in the affirmative. Defendant was informed that the detectives

were there to obtain his version of the circumstances surrounding Gahan's death. Defendant did not respond in any way to the detective's request. Detective Schultz then showed a photograph of Gahan's body to defendant. Defendant pushed the picture aside and said, "I have not murdered anyone." Detective Schultz then told defendant what they had been told regarding defendant's involvement in Gahan's death. Defendant asked to read the written statements the detectives had, but was not allowed to read them because the detectives did not want the statements to influence anything defendant might want to say. After the detectives told defendant the events as they believed them to be, defendant sat silently for several minutes. Detective Costello told defendant to tell them if he did not want to talk in order to save everyone time. Defendant bowed his head and after about 30 seconds began to give a statement as to what happened the night of April 21, 1986.

Defendant's version of the events leading up to his statement are as follows. While Detective Costello was reading defendant his rights, Detective Schultz showed defendant a photograph of Gahan's body saying, "You burned him alive, you murdered him." Defendant responded that he did not murder anyone and that he wanted a lawyer. Detective Schultz then produced written statements and told defendant that they were made by people who implicated defendant in Gahan's murder. Defendant refused to talk to the detectives for approximately half an hour, during which time the detectives conveyed to defendant what they had determined as a result of their investigation. According to defendant, about an hour after the detectives began interviewing him, he began to shake, and due to intimidating words used by Detective Schultz, defendant began to tell the detectives about Gahan's death. Defendant, however,

was unable to remember what Detective Schultz said which was intimidating.

## MISTAKE OF FACT JURY INSTRUCTION

Defendant was charged with two counts of murder. Both charges stated that he beat and burned and thereby caused the death of Gahan. Count I charged that defendant acted "with intent to kill or do great bodily harm," and count II charged defendant acted "knowing such acts created a strong probability of death or great bodily harm." (Ill. Rev. Stat. 1987, ch. 38, pars. 9—1(a)(1), (a)(2).) Defendant argues that in regard to the beating, the action taken by him, in repeatedly striking Gahan with numchucks, was in self-defense. In regard to the burning, defendant argues that he is not guilty of murder because at the time of the burning, he believed that Gahan was already dead. The trial court instructed the jury on self-defense, but refused to give defendant's mistake of fact instruction.

Defendant argues that the appellate court, relying on *People v. Ellison* (1984), 126 Ill. App. 3d 985, correctly determined that he was denied a fair trial by the trial court's refusal to instruct the jury on mistake of fact. We agree. A defendant is entitled to an instruction on his theory of the case if there is some foundation for the instruction in the evidence (*People v. Unger* (1977), 66 Ill. 2d 333, 338), and if there is such evidence, it is an abuse of discretion for the trial court to refuse to so instruct the jury (*People v. Papas* (1942), 381 Ill. 90, 95). Defendant's mistake of fact defense was supported by the evidence. Detectives Costello and Schultz both testified that while defendant was giving his statement, he said that he believed Gahan was dead prior to the burning. The State's experts who testified on Gahan's cause of death were unable to conclusively determine that Gahan was alive at the time of burning. While Doctor

Powers testified that Gahan was probably alive at the time of the burning, he acknowledged that it was possible that he was already dead. Doctor Blum testified that a lay person seeing an unconscious body with injuries like Gahan's might reasonably conclude that the person was dead. This evidence satisfies the requirement of some foundation to entitle defendant to an instruction on mistake of fact.

Mistake of fact is a valid defense if the mistake negates "the existence of the mental state which the statute prescribes with respect to an element of the offense." (Ill. Rev. Stat. 1987, ch. 38, par. 4—8.) In the present case, the trial court, while acknowledging that defendant's tendered mistake of fact instruction was an accurate statement of the law, refused to give it to the jury on the basis that the standard jury instructions adequately covered the mental state requirement. In the instant case, the jury was instructed:

> "To sustain the charge of murder, the State must prove the following propositions: first, that the defendant performed the acts which caused the death of Robert P. Gahan; and second, that when the defendant did so, he intended to kill or do great bodily harm to Robert P. Gahan or he knew that his acts created a strong probability of death or great bodily harm to Robert P. Gahan; and third, that the defendant was not justified in using the force which he used. If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty. If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

This instruction, while sufficiently informing the jury of the mental state requirements, does not expressly draw to the jury's attention the concept of mistake of fact. Since Illinois recognizes the defense of mistake of fact,

when this defense is supported by the evidence it is not sufficient to merely inform the jury of the mental state requirements, but it must also be informed of the validity of the mistake of fact defense. Since (1) defendant's whole case rested upon the concepts of self-defense and mistake of fact, and (2) there exists some evidence upon which a jury could reasonably conclude that defendant burned Gahan under the mistaken belief that he was dead, the failure to give the mistake of fact instruction to the jury cannot be considered harmless.

## *REDDICK* VIOLATION

Defendant argues that the jury instructions given by the trial court were of the type that were found to be improper in *People v. Reddick* (1988), 123 Ill. 2d 184. In *Reddick*, this court determined that when the then-existing Illinois pattern jury instructions for murder and voluntary manslaughter were read together, the burdens of proof were erroneously stated on the issues of whether the defendant acted under intense passion or an unreasonable belief that his action was justified. (*Reddick*, 123 Ill. 2d at 193-95.) In the instant case, as in *Reddick*, the voluntary manslaughter instructions indicate that to obtain a voluntary manslaughter conviction the State must prove that when defendant killed Gahan he acted under a mitigating mental condition which justified the killing. The State argued that a mitigating mental condition did not exist. The murder instruction, on the other hand, did not mention the existence of mitigating mental conditions. The jury, by following these instructions, could not have convicted defendant of voluntary manslaughter, because even if a mitigating mental state was proved, it would have been proved by defendant and not the State. While the instructions given in the present case were of the type found to be improper in *Reddick*,

from our examination of the record, we conclude that the error which occurred was harmless beyond a reasonable doubt.

In *People v. Shields* (1991), 143 Ill. 2d 435, 445-46, it was determined that *Reddick*-type errors may be harmless depending on the evidence presented at trial. It was stated in *Shields* that to determine the effect of the faulty jury instruction the record as a whole must be examined, including the evidence and arguments presented to the jury. (*Shields*, 143 Ill. 2d at 445-46.) Testimony in the case at bar revealed that defendant, in response to being grabbed by the back of the neck and choked by Gahan, beat Gahan with a pair of numchucks until he fell to the ground. Defendant told detectives that Gahan's grabbing and choking of him was totally unprovoked and Gahan did not make a sexual advance upon defendant. However, another witness testified that defendant told her that the fight occurred after defendant resisted a sexual advance made by Gahan. This witness testified that defendant told her that Gahan put his hand on defendant's leg, and as a result a fight ensued. After beating Gahan until he fell to the ground, defendant took Gahan's wallet, money, jewelry and car, and went to a friend's house. Defendant later returned with a can of gasoline, and claiming that he thought Gahan was dead, soaked Gahan with gasoline and set him on fire in an attempt to hide the evidence. Defendant also wiped Gahan's car down in an attempt to remove his fingerprints. Experts for the State testified that in their opinion Gahan was alive at the time of the burning, but there was a possibility that he was already dead as a result of the beating.

Reviewing the record as a whole convinces us that the claimed instructional error given to the jury was harmless beyond a reasonable doubt (*People v. Moore* (1983), 95 Ill. 2d 404, 410), and that the evidence in

support of the murder conviction is so clear and convincing that the jury's verdict would not have been different had other instructions been used. See *People v. Austin* (1989), 133 Ill. 2d 118, 124.

## ADMISSION OF THE STATEMENT MADE BY DEFENDANT TO DETECTIVES

Defendant argues that the trial court erroneously declined to suppress the statements he made to the detectives during the interview in the Las Cruces, New Mexico, jail. We agree with the appellate court that the statements were admissible. The trial court held an evidentiary hearing and determined that the statements were voluntary. Defendant, in response to being asked if he understood the *Miranda* warnings and if he wished to talk, nodded affirmatively. This is evidence that defendant knowingly and voluntarily waived his right to remain silent. (*People v. Brown* (1986), 146 Ill. App. 3d 101, 104-05.) Merely showing defendant a photograph of the crime scene would not constitute coercion. (*People v. Gorham* (1978), 66 Ill. App. 3d 320, 324.) After the detectives told defendant of the events as they believed them to be, the detectives and defendant sat silently for several minutes. Detective Costello told defendant to tell them if he did not want to talk. Defendant then began to give his statement. Based upon the evidence, the trial court could properly conclude that defendant's statement was voluntarily made and admissible.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that trial counsel failed to investigate his claim that he invoked his right to counsel on the *New Mexico charges* and the subsequent questioning by the Illinois detectives, regarding the Illinois crime, occurred without counsel being provided. Thus,

defendant contends that if such an investigation had taken place, the subsequent statements he made to the detectives would have been suppressed at trial because they were obtained in violation of the sixth amendment.

The sixth amendment right to counsel is offense-specific. "It cannot be invoked once for all future prosecutions," because the sixth amendment does not attach until the initiation of adversary judicial criminal proceedings. (*McNeil v. Wisconsin* (1991), 501 U.S. ___, ___, 115 L. Ed. 2d 158, 166-67, 111 S. Ct. 2204, 2207.) In *McNeil*, the defendant was represented by a public defender at a bail hearing regarding a charge of armed robbery. While being held in jail, the defendant, after being advised of his *Miranda* rights and waiving them, was questioned by police on a murder unrelated to the armed robbery. The defendant made statements which incriminated himself. Prior to trial on the murder charge, defendant moved to suppress the incriminating statements. The motion was denied. Defendant appealed arguing that the statements he made should have been suppressed since his court appearance with an attorney on the armed robbery charge constituted an invocation of the *Miranda* right to counsel, and that any subsequent waiver of that right during police-initiated questioning regarding *any* offense was invalid. (*McNeil*, 501 U.S. at ___, 115 L. Ed. 2d at 166, 111 S. Ct. at 2207.) The Supreme Court held that an invocation of the sixth amendment right to counsel during a judicial proceeding does not constitute an invocation of the fifth amendment right to counsel under *Miranda*. Additionally, the court noted that although the *Miranda* right to counsel is non-offense-specific, and once asserted prevents any further police-initiated interrogation outside the presence of counsel, its assertion cannot be inferred from the invocation of the sixth

amendment right. *McNeil*, 501 U.S. at ___, 115 L. Ed. 2d at 168-69, 111 S. Ct. at 2208-10.

Applying *McNeil* to the case at bar, even if defendant did request counsel in regard to the New Mexico offenses, this request would not relate to the questioning regarding the events surrounding the murder of Gahan. Defendant was being held in New Mexico on misdemeanor traffic offenses and as a fugitive from justice in Illinois because of a parole violation and an outstanding warrant. Defendant was informed that New Mexico does not appoint counsel on fugitive from justice charges. Additionally, while two offenses may be sufficiently similar that a sixth amendment right to counsel on one triggers a right to counsel on the other (*People v. Clankie* (1988), 124 Ill. 2d 456, 465), the New Mexico and Illinois offenses are not related for sixth amendment purposes. Defendant had not been charged with the murder of Gahan at the time of the questioning. Thus, the initiation of adversary proceeding had not begun and the sixth amendment did not apply.

## TRIAL COURT'S REFUSAL TO APPOINT NEW COUNSEL TO ARGUE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL

In order for defendant to prove ineffective assistance of counsel, he must establish both: (1) that his attorney's performance was deficient in that it "fell below an objective standard of reasonableness," and (2) that he suffered substantial prejudice as a result of counsel's deficiencies. (*Strickland v. Washington* (1984), 466 U.S. 668, 688, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064; *People v. Albanese* (1984), 104 Ill. 2d 504.) No such showing has been made in this case.

Defendant, relying on *People v. Krankel* (1984), 102 Ill. 2d 181, contends that the trial court erred in not

appointing new counsel to represent him to argue his oral motion alleging his trial counsel's ineffectiveness. *Krankel*, however, did not establish a *per se* rule that all *pro se* motions for a new trial alleging the ineffective assistance of counsel must result in the appointment of new counsel. (*People v. Mallette* (1985), 131 Ill. App. 3d 67, 73-75; *People v. Jackson* (1985), 131 Ill. App. 3d 128, 137-40.) A trial court's decision not to appoint separate counsel on an ineffective-assistance-of-counsel claim will not be erroneous if the underlying claim is deemed to be without merit or related to a matter of trial tactics. (*Jackson*, 131 Ill. App. 3d at 139.) In the case at bar, defendant argues that trial counsel was ineffective because he failed to investigate defendant's claim of having an attorney appointed on the New Mexico charges. This issue has already been addressed, and it was concluded that defendant's statements were properly admissible. A review of the record indicates that defense counsel presented the case in the manner defendant requested even though defense counsel on a few occasions advised defendant that in his professional opinion it would be beneficial to take a different strategic step. Thus, since defendant's claim is without merit, and since the case was presented in the manner in which he requested, defendant was not entitled to new counsel.

For the reasons set forth above, we affirm the judgment of the appellate court.

*Appellate court affirmed.*