992 F.2d 136
 David CRANE, Plaintiff-Appellant,
v.
Paul LOGLI, Winnebago County, Illinois, Howard A. Peters,
III, Kenneth McGinnis, Keith Cooper, James W.
Fairman, Jr., and Michael P. Lane,
Defendants-Appellees.
 No. 92-2374.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 19, 1993.
Decided April 30, 1993.
 
 Richard A. Palmer, Sterling, IL (argued), for plaintiff-appellant.
 Gary L. Kovanda (argued), Charles J. Prorok, Office of State's Atty. of Winnebago County, Rockford, IL, Deborah L. Ahlstrand, Asst. Atty. Gen., Chicago, IL, Joseph P. Bruscato, Rockford, IL, for defendants-appellees.
 Before BAUER, Chief Judge, COFFEY, and EASTERBROOK, Circuit Judges.
 BAUER, Chief Judge.
 
 
 1
 David Crane filed this lawsuit, pursuant to 42 U.S.C. § 1983, against Paul Logli, Howard A. Peters, III, Kenneth McGinnis, Keith Cooper, James W. Fairman, Jr., Michael P. Lane, and Winnebago County, Illinois for alleged violations of his federal constitutional rights. Defendant Logli is the State's Attorney of Winnebago County, Illinois and the other individual defendants are former and present Illinois Department of Corrections ("IDOC") officials and former and present wardens of the Joliet Correction Center ("JCC"). Crane claims that the defendants violated his Fourteenth Amendment rights by punishing him without due process of law. The district court dismissed his amended complaint. Because the complaint does not allege any violations of Crane's constitutional rights, we affirm.
 
 I.
 
 2
 The complaint, which Crane filed on January 6, 1992, alleges the following facts. On October 7, 1987, after his conviction for murder in the Circuit Court of Winnebago County, Illinois, Crane received a 40-year prison sentence to be served in the IDOC. The Appellate Court of Illinois reversed Crane's conviction and remanded the case for a new trial. People v. Crane, 196 Ill.App.3d 264, 144 Ill.Dec. 78, 554 N.E.2d 1117 (1990). The Supreme Court of Illinois affirmed the appellate court's decision. People v. Crane, 145 Ill.2d 520, 165 Ill.Dec. 703, 585 N.E.2d 99 (1991), cert. denied, --- U.S. ----, 112 S.Ct. 1977, 118 L.Ed.2d 576 (1992).
 
 
 3
 Under Illinois law, once a person's conviction is reversed and remanded for a new trial, the reviewing court is required to issue a mandate. Until the reviewing court issues its mandate, it retains jurisdiction over the matter. People v. Baker, 85 Ill.App.3d 661, 40 Ill.Dec. 785, 786, 406 N.E.2d 1152, 1153 (1980). Once the court issues its mandate, the clerk of the court must send a copy of the mandate by certified mail to the imprisoning officer. Ill.Rev.Stat. ch. 110A, para. 613(c).[1] Upon receipt of the mandate, the imprisoning officer is required to return the prisoner to the trial court. Crane filed his complaint before the Illinois Supreme Court issued its mandate.
 
 
 4
 Crane remained incarcerated in the JCC after the reversal of his conviction. Crane's complaint alleges that the JCC is a maximum security prison which is designed and operated to punish convicted felons who are serving either long-term or life sentences.[2]
 
 
 5
 Crane complains that after his conviction was reversed, the defendants should have moved him to a minimum or medium security prison, such as the Winnebago County jail. The Winnebago County jail is designed primarily to incarcerate pretrial detainees. Crane argues that his continued incarceration at the JCC violated his constitutional rights. Crane seeks compensatory damages, punitive damages, injunctive relief, costs, and attorney's fees. The district court dismissed the complaint and Crane appeals.
 
 II.
 
 6
 We review the district court's dismissal of the complaint de novo. Dimmig v. Wahl, 983 F.2d 86, 87 (7th Cir.1993). We accept all well-pleaded facts alleged in the complaint as true and draw all reasonable inferences in Crane's favor. Id. We do not, however, ignore facts alleged in the complaint that undermine Crane's claim nor do we assign any weight to unsupported conclusions of law. Id.
 
 
 7
 To state a valid Section 1983 claim, the complaint must allege that the defendants acted under color of state law to deprive Crane of rights, privileges, or immunities secured to him by the Constitution or laws of the United States. For purposes of this opinion, we assume without deciding that the defendants acted under color of state law and focus on the second prong of this two-part inquiry. Specifically, we ask if the complaint alleges any set of facts that, if true, would give rise to a deprivation of Crane's constitutional rights.[3] We review Crane's appeal with these standards in mind.
 
 
 8
 Crane contends that the defendants violated the Fourteenth Amendment Due Process Clause when they continued to incarcerate him in the JCC after the reversal of his murder conviction.[4] Specifically, he claims that he became a pretrial detainee when his conviction was reversed. As a pretrial detainee, he alleges that he was constitutionally protected from punishment by the state. Crane contends that defendants violated this constitutional right by continuing to incarcerate him in the JCC--a facility that, as defined in the complaint, is designed to punish prisoners.
 
 
 9
 We engage in a two-step inquiry to evaluate Crane's due process claim. First, we must determine whether there was a deprivation of a protected due process interest--here, in Crane's liberty. Vukadinovich v. Board of Sch. Trustees, 978 F.2d 403, 410 (7th Cir.1992). If so, we then ascertain whether the procedures attendant upon the deprivation were constitutionally sufficient. Id.
 
 
 10
 As an initial matter, we note that the Due Process Clause does not protect a duly convicted prisoner from being transferred from one prison to another. Meachum v. Fano, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). Crane's complaint may only have merit, then, if Crane ceased to be a convicted prisoner once the Supreme Court of Illinois reversed his conviction, but before it issued its mandate. He claims that he became a pretrial detainee when his conviction was reversed and, as such, had a protected liberty interest in the type of prison in which he was incarcerated.
 
 
 11
 In Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Supreme Court held that the Due Process Clause allows the government to incarcerate pretrial detainees prior to trial. The Court also held, however, that due process does not permit pretrial detainees to be incarcerated in punitive conditions. Id. at 535, 539, 99 S.Ct. at 1871, 1874. See also Graham v. Connor, 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 1871 n. 10, 104 L.Ed.2d 443 (1989) ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.").
 
 
 12
 The Court in Bell defined pretrial detainees as "those persons who have been charged with a crime but who have not yet been tried on the charge." Bell, 441 U.S. at 523, 99 S.Ct. at 1865. We do not believe this definition includes prisoners like Crane, whose convictions have been reversed but the reversing court's mandate has not yet issued. The State of Illinois had charged Crane with the crime of murder and, importantly, had tried and convicted him on that charge. Bell does not require us to hold that Crane became a pretrial detainee, in a constitutional sense, once his conviction was reversed. The reversal of his conviction did not change his status under the Due Process Clause.
 
 
 13
 Crane contends that Getch v. Rosenbach, 700 F.Supp. 1365 (D.N.J.1988), establishes that he became a pretrial detainee when his conviction was reversed. In Getch, also a Section 1983 suit, the plaintiff, like Crane, was an inmate at a state prison. Id. at 1367. The plaintiff claimed that the defendants, a state prosecutor and prison superintendent, violated his constitutional rights by confining him for almost ten months after his conviction had been reversed. Id. The court stated that "[a]fter [the plaintiff's] original conviction was overturned, [he] acquired the status of a pretrial detainee." Id. at 1370. Crane claims that this language establishes that he became a pretrial detainee for purposes of the Due Process Clause. We disagree.
 
 
 14
 In Getch, although the court stated that the plaintiff had become a pretrial detainee, the court refused to hold that this status was of constitutional significance. In fact, the court noted that the plaintiff "made no argument that he had a liberty interest arising directly under the Due Process Clause itself" and interpreted "[the plaintiff's] silence in this regard as a concession that he had no such interest." Id. at 1372. Instead, the court looked to an Executive Order of the New Jersey Governor as the potential source of a due process liberty interest. The order required, inter alia, that "only persons sentenced to prison or committed to the custody of the Commissioner [of the New Jersey Department of Corrections] may be confined in a State Prison." Id. at 1371. The plaintiff in Getch claimed that this portion of the order created a liberty interest. Id. After careful analysis of the order, the court concluded that it did not. Id. at 1373. The court therefore held that the plaintiff had established no due process liberty interest and granted the defendants' motion for summary judgment.
 
 
 15
 This is an even stronger case for the defendants than Getch. Crane points to nothing--such as the order in Getch--that might confer a due process liberty interest upon him once his conviction was reversed. He merely alleges, relying on Bell and Getch, that he became a pretrial detainee and, consequently, that the Due Process Clause required that the defendants transfer him to a minimum or medium security prison. This is not enough. As we have discussed, these cases do not support his contention that his status changed the instant his conviction was reversed, nor are we aware of any cases that support this argument. The complaint fails to allege any constitutional violation because it does not set forth facts that implicate a Due Process liberty interest.
 
 III.
 
 16
 We limit our inquiry into the management of the Illinois state prisons to the question of whether any constitutional violation has occurred. Bell, 441 U.S. at 562, 99 S.Ct. at 1886. The Constitution permits the IDOC officials to make a broad range of management decisions. Id. The defendants' decision to hold Crane at the JCC until the Supreme Court of Illinois issued its mandate falls well within the scope of their discretion. As such, the complaint simply does not allege any facts that, if true, would amount to a violation of Crane's constitutional rights.[5] The decision of the district court dismissing the complaint is therefore
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 We note that under the new compilation of the Illinois statutes the provisions of Chapter 110A will be cited differently
 
 
 [2]
 Crane's Brief indicates that the Illinois Supreme Court issued its mandate on February 13, 1992. The mandate directed the IDOC to transfer Crane back to the trial court for retrial. Crane was therefore transferred from the JCC to the Winnebago County jail, where he was incarcerated while awaiting his new trial. See Appellant's Brief at 5
 
 
 [3]
 We do not ask whether Crane's complaint states a cause of action for violations of federal law other than the Constitution because he alleges only constitutional violations
 
 
 [4]
 The Due Process Clause of the Fourteenth Amendment declares that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1
 
 
 [5]
 We have carefully considered the other issues raised by Crane and conclude that they are without merit and do not warrant discussion