THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRANK ATHERTON, Defendant-Appellant.

Second District    No. 2—92—1241

Opinion filed May 2, 1994.

G. Joseph Weller, Paul J. Glaser, and Patrick M. Carmody, all of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COLWELL delivered the opinion of the court:

Defendant, Frank Atherton, was convicted of residential burglary (Ill. Rev. Stat. 1991, ch. 38, par. 19—3(a) (now 720 ILCS 5/19—3(a) (West 1992))) and resisting or obstructing a peace officer (Ill. Rev.

Stat. 1991, ch. 38, par. 31—1 (now 720 ILCS 5/31—1 (West 1992))). He was sentenced to 10 years' imprisonment for residential burglary and to a one-year concurrent term of imprisonment for the misdemeanor conviction. On appeal, defendant raises as his sole issue whether his conviction of residential burglary must be reversed because the trial court refused to instruct the jurors regarding the affirmative defense of mistake of fact.

Defendant originally pleaded guilty to residential burglary, but he was allowed to withdraw his guilty plea and the cause proceeded to a jury trial. Lenore Ellison, the State's first witness, testified that on December 23, 1991, she lived in a downstairs apartment at 1440 Fourth Avenue in Rockford. As a result of a telephone call from the police, she left work and returned to her home before noon. She described the interior of her apartment as being in "total shambles," with garbage strewn over the dining room area. Ellison kept her garbage in a container which had been lined with a plastic bag, but the bag had been removed and stuffed with Christmas presents taken from other areas of her apartment. She found her video recorder, jewelry, and some loose coins from her penny collection stuffed inside of a pillow case. Her television set had been unplugged. Contents from the drawers in her bedroom had been dumped onto the dog's bed. Additionally, Ellison noted that the window in the laundry room which led to her apartment from the back door of the building had been broken and a board that she had placed over the door had been moved. The casing around the window had been damaged. Missing from her apartment were a camera and some jewelry. She recovered those items from the police.

Robert Payne testified that he lived across the street from Ellison and from his window at approximately 11:30 a.m. on December 23, 1991, he noticed two men, one white and one black, standing across the street and throwing snowballs at one another. Payne was familiar with 1440 Fourth Avenue and he noticed the black man, later identified as Donald Hirsch, go into the front door which led to the upstairs. The white male, identified by Payne as defendant, walked up the street to the corner. Hirsch came back downstairs, and defendant returned to the front of the house. Hirsch again went up the front stairs and defendant stayed out front and looked up and down the street. Payne watched for some minutes until defendant also climbed the front stairs, and then Payne called the police.

When the police arrived, Payne told them that he had seen two men enter the upstairs apartment at 1440 Fourth Avenue, an apartment he knew to be vacant. Payne watched as a police officer chased Hirsch over a fence and another officer chased defendant

until a third officer caught him. A struggle ensued, with defendant kicking and punching the officer. Payne testified that Hirsch was dressed with a muffler around his face and his hood up, but defendant had nothing concealing his face.

Police officer Patrick Hoey responded to a burglary in progress and upon his arrival at the scene he was advised by Officer Meehan that two men might be in the building. Once the building was surrounded, Officer Hoey approached the front of the building and was met by a black man who was exiting the building. The man appeared startled and slammed the door in Hoey's face, locking the door. Hoey radioed to other officers to inform them that people were inside the building and then he heard Officer Meehan scream from the back of the house. Hoey ran to the back where he saw a black man jump over the fence at the back of the house. He also saw Officer Meehan struggling with a white man. Another officer, Officer Girardi, assisted Meehan so Hoey chased the black man through some yards. Hoey recovered a jacket from the backyard where the black man had been hiding. Upon recovering the jacket, Hoey noticed the pocket had been ripped out. He found the pocket, and inside the pocket, Hoey found a camera and a necklace. Hoey apprehended the black man and returned to the scene where he saw defendant sitting in the back of a squad car.

Michael Meehan, a Rockford police officer, was the first to arrive at the scene after Robert Payne called police. When Officer Hoey and Officer Girardi arrived, he checked the rear of the residence and observed fresh footprints leading to the staircase of the residence. After Meehan returned to the front of the residence, he observed a black man inside of the house and saw the man slam the door. Meehan then went to the back of the house, where the black man and defendant were exiting the back staircase. Defendant was in the lead, and Officer Meehan took out his gun and pointed it at him. Meehan ordered defendant to stop, but the men continued down the stairs and defendant then ran around Meehan and ran behind the residence. Meehan chased him and tackled him. Defendant continued to struggle and attempted to grab Meehan's arm which held the gun. At that point, Officer Girardi assisted and placed defendant on the ground, handcuffed him, and took him into custody. At a later date, Meehan talked with Ellison, who told him that she had not given anyone permission to be in her apartment on December 23, 1991.

Dawn Smith testified for the defense that she and her husband had rented a room in their house to defendant approximately six months prior to December 23, 1991. For approximately two weeks prior to that date, Smith's husband had allowed Don Hirsch to live

with them because he had been kicked out of his apartment. When Hirsch moved in, he brought just clothing. He indicated he had possessions at other places, but did not specify where. At approximately 11 a.m. on December 23, 1991, Smith heard a conversation between defendant and Hirsch. Hirsch asked defendant to help him move his things from an apartment he had previously lived in to his new place. Defendant agreed to help and he left. Smith stated that Hirsch told her that he used to stay at the Grand Hotel. Despite the fact that Smith knew defendant had been arrested by December 24, 1991, she did not contact the police regarding the conversation she had overheard. Smith admitted that she had a conviction of misdemeanor retail theft; that since December 23, 1991, she had moved into a house for alcohol rehabilitation; and that at the beginning of 1992 she had moved to a shelter because her husband abused her.

Defendant testified that he had pleaded guilty to two counts of armed robbery on January 22, 1985, and he was currently on parole. According to defendant, on the morning of December 23, 1991, Don Hirsch woke him up and asked if he would help him move some of his belongings from a house he used to live in. Defendant agreed to do so. Defendant did not know where to go, so he followed Hirsch. They walked to the front door of a house, went up the steps, and opened the door to an apartment. The apartment appeared to be vacant, and Hirsch told defendant that his things must be downstairs where the landlord lived. Hirsch suggested that defendant wait outside, so defendant did. Defendant waited approximately 10 minutes until Hirsch called him.

At that time, defendant went to the back of the residence, climbed the stairs, and started to enter the lower apartment. Defendant noticed some garbage bags and broken glass. Then, Hirsch came running out and pushed defendant out the door. Defendant saw a police officer with his gun drawn, got scared, and ducked under the staircase. Defendant tried to explain the situation and move the gun from his face, but Officer Meehan hit him in the ribs and the two began to struggle. Defendant testified it was not his intention to steal anything from the apartment at 1440 Fourth Avenue.

On cross-examination, defendant stated that he did not take any boxes, bags, or a cart over to the house to help Hirsch move. Defendant expected to move just a few boxes of clothes.

At the instructions conference, defense counsel requested an instruction on mistake of fact, an affirmative defense. (Ill. Rev. Stat. 1991, ch. 38, par. 4—8(a) (now 720 ILCS 5/4—8(a) (West 1992)).) The court stated that defense counsel could argue the affirmative defense because defendant had a right to have the jury instructed on his the-

ory of the case, but the court also stated that the element of intent was included in the residential burglary instruction and denied defendant's request for a specific instruction on mistake of fact.

In closing argument, defense counsel argued that defendant went to the apartment with Hirsch believing that he was helping Hirsch to move some of Hirsch's things. Counsel further argued that defendant saw no forced entry and other witnesses saw defendant sitting outside, which corroborated defendant's version that he was told by Hirsch to wait outside. Defense counsel suggested that defendant did not flee because he was guilty but because he panicked.

Defendant contends on appeal that the trial court committed reversible error in refusing to allow an instruction on mistake of fact where the defendant's theory of the case was that he mistakenly thought that he was helping Hirsch move some of his things out of a prior residence.

In a similar case, this court held that the trial court's refusal to allow an instruction on mistake of fact was reversible error. (*People v. Ellison* (1984), 126 Ill. App. 3d 985, 998.) In *Ellison*, defendant was convicted of burglary and theft over $300. The police stopped defendant after receiving a tip that a home may have been burglarized by two men in a white station wagon with blue doors. Defendant was driving such a car when he was stopped. He explained the presence of appliances in the back of his car by stating that he had been helping a friend move. He made a similar statement to police after he was arrested. Defendant later made an inconsistent statement, but at trial he again testified that he thought he was helping a friend move. Defense counsel's instruction on mistake of fact was rejected by the court. This court held that the refusal to give the instruction was reversible error because it would have allowed the jury to consider whether defendant was acting in the innocent belief that he was helping a friend move. *Ellison*, 126 Ill. App. 3d at 998.

■ In the instant case, defendant testified that he believed that he was helping Don Hirsch to move some of his belongings from a prior residence. Additionally, Dawn Smith testified that she heard Don Hirsch ask defendant to help him move some of his things. Obviously, this additional testimony supported defendant's theory of mistake of fact. Under these circumstances, the trial court should have allowed defendant to instruct the jury on mistake of fact. A defendant is entitled to an instruction on his theory of the case if there is some foundation for the instruction in the evidence. (*People v. Crane* (1991), 145 Ill. 2d 520, 526.) *Crane* held that the trial court's refusal to instruct the jury on mistake of fact constituted reversible error. *Crane*, 145 Ill. 2d at 528.

In this case, the State urges us to find that since the instruction proffered was not an Illinois Pattern Jury Instruction (IPI), it was within the court's sound discretion to determine that the instruction should not be given and the instruction proffered in this case would only have confused and misled the jurors. We acknowledge that the determination of whether to give a non-IPI jury instruction is within the discretion of the trial court. (*People v. Sanchez* (1982), 110 Ill. App. 3d 893, 903.) However, we do not agree that the instruction proffered by the defense in this case would have confused or misled the jurors. In the case at bar, defense counsel orally requested the instruction, and as a basis for the request, he read in part from the statute allowing mistake of fact as an affirmative defense. The statute provided:

> "A person's ignorance or mistake as to a matter of either fact or law, except as provided in Section 4—3(c) above, is a defense if it negatives the existence of the mental state which the statute prescribes with respect to an element of the offense." (Ill. Rev. Stat. 1991, ch. 38, par. 4—8(a) (now 720 ILCS 5/4—8(a) (West 1992)).)

The State argues that the inclusion of the phrase "or law" in the instruction would have misled and confused the jurors. In *Crane*, the proffered instruction excised the words regarding mistake of law, and this court stated defendant should have received this simple, brief, impartial and nonargumentative, non-IPI instruction. (*Crane* (1990), 196 Ill. App. 3d 264, 268-69, *aff'd* (1991), 145 Ill. 2d 520.) In the instant case, at the instructions conference, defense counsel did not have a written form of the proposed instruction ready for tender. Instead, he orally requested an instruction on ignorance or mistake and he read in part from the statute regarding that affirmative defense. (Ill. Rev. Stat. 1991, ch. 38, par. 4—8(a) (now 720 ILCS 5/4—8(a) (West 1992)).) The oral request included a phrase regarding ignorance or mistake of law. However, included in the common-law record on appeal is a written instruction, obviously tendered at a later point, which excised the language regarding ignorance or mistake of law. The instruction, which was marked "denied," read:

> "A persons [*sic*] ignorance as to a matter of fact is a defense if it negates the existence of the mental state which the statute prescribes with respect to an element of the offense charged."

Supreme Court Rule 451(c) provides that instructions in criminal cases shall be tendered in accordance with section 2—1107 of the Code of Civil Procedure. (134 Ill. 2d R. 451(c).) An original and one copy of each instruction asked by any party shall be tendered to the court. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1107(a) (now 735 ILCS

5/2—1107(a) (West 1992)).) Defense counsel should have tendered a written copy of the instruction to the court at the instructions conference. However, since defense counsel orally requested the instruction, followed up with a written instruction with wording we find to be simple and nonargumentative, and raised the issue in his post-trial motion, we will consider the failure to give the instruction. (*People v. Tyler* (1989), 188 Ill. App. 3d 547, 552.) Under these circumstances, where the defendant's theory of the case was mistake of fact and there was evidence to support that theory, the court's failure to instruct the jurors on the affirmative defense of mistake of fact was an abuse of discretion.

■ We also reject the State's argument that any error was harmless due to the nature of the evidence. The State argues that defendant's testimony that he thought he was helping a friend was unbelievable and that his flight from police officers was a strong indication that he did not believe that he was engaging in innocent conduct. The refusal to give an instruction may be harmless error when the result of the trial would not have been different if the instruction had been given. (*People v. Moore* (1983), 95 Ill. 2d 404, 410.) In other words, if the evidence of defendant's guilt is so clear and convincing that a jury could not have reasonably found the defendant not guilty, the refusal of the instruction will not, alone, justify reversal. *Moore*, 95 Ill. 2d at 410.

While the State labels the defendant's testimony "absurd" and suggests that defendant's credibility was further destroyed by his prior felony convictions, we note that there was nothing inherently unbelievable about defendant's testimony that he thought he was helping Hirsch to move his possessions from one building to another. In fact, Dawn Smith testified that she heard a conversation between Hirsch and defendant in which Hirsch asked defendant to help him move. Additionally, defendant explained his flight from the police as the result of panic once Hirsch began to push him from the apartment and he was confronted with a police officer with a gun drawn. While the jury might have chosen not to believe defendant's explanations, there was sufficient evidence supporting defendant's theory that we cannot state that a properly instructed jury could not have reasonably found the defendant not guilty. It is not enough that the jurors were instructed under the residential burglary instruction as to the mental state requirement because the instruction does not expressly draw to the jury's attention the concept of mistake of fact. *Crane*, 145 Ill. 2d at 527.

The State points out that defendant does not urge this court to reverse his conviction of resisting or obstructing a peace officer and

the State further urges this court to hold that the failure to instruct on mistake of fact would have no bearing on this conviction. We agree. A person has no right to resist even an unlawful arrest. *People v. Locken* (1974), 59 Ill. 2d 459, 465; see Ill. Rev. Stat. 1991, ch. 38, par. 7—7 (now 720 ILCS 5/7—7 (West 1992)).

Accordingly, for the reasons stated above, we reverse defendant's conviction of residential burglary and remand for a new trial. We have reviewed the evidence and find that, if believed by the jury, it was sufficient to support the conclusion that defendant was guilty beyond a reasonable doubt of residential burglary; this finding does not constitute in any way an implication of defendant's guilt or innocence which would be binding on retrial, and is intended only to protect defendant from the risk of being subjected to double jeopardy. (See *People v. Taylor* (1979), 76 Ill. 2d 289, 309.) We affirm the defendant's conviction of resisting or obstructing a peace officer.

Affirmed in part; reversed in part and remanded.

INGLIS, P.J., and GEIGER, J., concur.