2019 IL App (2d) 170442-U
No. 2-17-0442
Order filed December 17, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 16-CF-2047 |
| | ) | |
| CRAIG V. SINGLETON, | ) | Honorable |
| | ) | Daniel P. Guerin, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hutchinson and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Trial court's failure to give jury instruction was harmless error; and the State's arguments in rebuttal did not deprive the defendant of a fair trial.

¶ 2    Following a jury trial, the defendant, Craig Singleton, was convicted of driving while his license was suspended (625 ILCS 5/6-303(a), (d-3) (West 2016)) and aggravated fleeing and eluding of a police officer (625 ILCS 5/11-204.1 (a)(1), (b) (West 2016)).  He was sentenced to a total of six years' imprisonment.  On appeal, the defendant argues that he was deprived of a fair trial because (1) the trial court failed to give Illinois Pattern Jury Instruction No. 3.11 (Illinois

Pattern Jury Instructions, Criminal, No. 3.11 (approved October 17, 2014) (IPI Criminal No. 3.11)) and (2) the State made improper statements during the rebuttal of its closing argument. We affirm.

¶ 3                                   I. BACKGROUND

¶ 4     On November 29, 2016, the defendant was charged by indictment with driving while his license was suspended (625 ILCS 5/6-303(a), (d-3) (West 2016)) and two counts of aggravated fleeing and eluding a police officer (625 ILCS 5/11-204.1 (a)(1), (b) (West 2016)). The charges all arose from the defendant's alleged conduct on October 5, 2016. On March 14, 2017, the trial court conducted a jury trial on the charges.

¶ 5     Trooper Andrew Clinton of the Illinois State Police testified that he was on duty at approximately 1 a.m. on October 5, 2016. While on patrol at mile post 30½ on northbound I-355, Clinton observed a brown GMC Acadia travelling 88 mph when the speed limit was 60 mph. Clinton observed the vehicle swerve slightly and thought something might be wrong with the driver. He activated his emergency lights, but the GMC did not stop. Clinton pulled his squad car up to the driver's side of the GMC. When Clinton was beside the GMC, the driver was approximately seven to eight feet away. Clinton described the driver as a black male in his "mid to upper thirties" with "scruffy" facial hair and hair that was "kind of in cornrows" but "kinda messed up."

¶ 6     Clinton kept trying to get the driver to pull over, but he did not stop. Clinton's "in-car speedometer" indicated that the GMC was driving approximately 114 mph in a 55 mph zone. In keeping with "district policy," Clinton stopped following the GMC because of "safety concerns."

¶ 7     After the incident, Clinton conducted an investigation to attempt to identify the driver. He learned that the car was registered to Denise Singleton (the defendant's mother). He also learned that the GMC had been involved in an incident in Chicago fifteen days later on October 20, 2016.

Clinton talked to Trooper Leathers of the Illinois State Police regarding that incident. Leathers told him that the defendant had been driving the GMC during the Chicago incident. Clinton thereafter determined that the defendant lived at an address in Lake in the Hills.

¶ 8    On November 8, 2016, Clinton and Trooper Kyle Fletcher of the Illinois State police went to the Lake in the Hills address. They saw a GMC backing out of the driveway onto the road. The defendant was in the driver's seat. Clinton testified that the defendant looked "the same" on October 5 and November 8.

¶ 9    On cross-examination, Clinton testified that as he tried to get the driver to pull over on October 5, Clinton was (1) driving at a high rate of speed through a construction zone; (2) running the GMC's registration by pressing a button on the microphone attached to his radio; (3) moving his spotlight to shine it into the GMC; and (4) operating his mounted radar from which he continuously read the GMC's speed as well as his own. Clinton acknowledged that he initially identified the GMC as a "gray Jeep" before partially correcting himself and calling it a "gray GMC." Ultimately, he discovered that the car was a brown GMC. Clinton stated that he saw Singleton for four to five seconds while driving 65-70 mph.

¶ 10    Clinton testified that he wrote reports on October 5 and November 8. These reports omitted information that Clinton testified to at trial. Specifically, the reports did not indicate that (1) Clinton used his lights, sirens, radio, and spotlight on October 5; (2) the GMC swerved on October 5; (3) the driver's hairstyle, facial hair, and clothing on October 5; (4) information about a "black male" sitting behind the driver; (5) Clinton's attempts to contact Denise Singleton's family members; (6) Clinton's ability to see the driver "quite clearly" on October 5; (7) Clinton's conversation with Trooper Leathers after searching the LEADS police database, including the

description of the individual driving the GMC in the October 20 incident; and (8) Trooper Fletcher's presence when Clinton interviewed the defendant on November 8.

¶ 11    On redirect, Clinton testified that he called for the GMC to stop and ran its registration after pulling up alongside of it and following it for about a mile.  He did not need to manually control his radar once he turned it on.  He was focused on driving and operating his spotlight so that he could see the GMC's driver.  Clinton's in-car camera documented his use of the spotlight, although he did not mention the spotlight in his reports.  He said he had a good look at the driver because only the GMC's back window was tinted.

¶ 12    Troopers Leathers and Fletcher also testified.  Trooper Leathers identified the defendant as the driver of the brown GMC Acadia involved in an incident in Chicago on October 20, 2016.  Trooper Fletcher observed the defendant backing out of a driveway in the brown GMC on November 8, 2016.  Both Leathers' and Fletcher's descriptions of the defendant's physical characteristics were consistent with how Clinton described them in his trial testimony.

¶ 13    The parties stipulated that the defendant's license was suspended on October 5, 2016.

¶ 14    At the close of evidence, the trial court held a jury instruction conference.  Defense counsel proposed three instructions regarding Clinton's impeachment by omissions in his reports.  Specifically, defense counsel submitted IPI Criminal No. 3.11 and two alternative non-IPI instructions citing *People v. King*, 10 Ill. App. 3d 652 (1973) and *People v. Brown*, 47 Ill. App. 3d 920 (1977).  The trial court denied all three instructions, finding that none of them adequately addressed impeachment by omission and that the proposed instructions were not "clear enough or exactly dealing with our situation."

¶ 15    At the close of the trial, the jury found the defendant guilty of both driving with a suspended license and aggravated fleeing and eluding.

¶ 16    Following the denial of his motion for a new trial, the trial court sentenced the defendant to a 3-year prison term for driving while his license was suspended and a concurrent 6-year term for aggravated fleeing and eluding.  The defendant thereafter filed a timely notice of appeal.

¶ 17                                    II.  ANALYSIS

¶ 18    The defendant's first contention on appeal is that the trial court abused its discretion in not submitting IPI Criminal No. 3.11 regarding impeachment by omission to the jury.  The defendant insists that the instruction was appropriate because Clinton was impeached with his failure to document in his report crucial details of his investigation into the identity of the driver on October 5, 2016.  Because the trial court did not submit the instruction, the defendant contends that he was deprived of a fair trial.

¶ 19    " 'The sole function of instructions is to convey to the minds of the jury the correct principles of law applicable to the evidence submitted to it in order that, having determined the final state of facts from the evidence, the jury may, by the application of proper legal principles, arrive at a correct conclusion according to the law and the evidence.' " *People v. Ramey*, 151 Ill. 2d 498, 535 (1992) (quoting *People v. Gambony*, 402 Ill. 74, 81-82 (1948)).  In general, whether the trial court erred in refusing a particular jury instruction is reviewed under an abuse of discretion standard.  *People v. McDonald*, 2016 IL 118882, ¶ 69.  Whether a particular jury instruction accurately conveyed to the jury the law applicable to the case, however, is an issue that we review *de novo*.  *People v. Nere*, 2018 IL 122566, ¶ 29; see also IPI Criminal 3.11, Committee Notes ("The materiality of the earlier [allegedly inconsistent] statement is a question of law for the court.").

¶ 20    " 'The theory of attack by prior inconsistent statements is not based on the assumption that the present testimony is false and the former statement true but rather upon the notion that talking

one way on the stand and another way previously is blowing hot and cold, and raises a doubt as to the truthfulness of both statements.' " *People v. Miller*, 2017 IL App (1st) 143779, ¶¶ 42, quoting John William Strong, McCormick on Evidence § 34 at 114 (4th Ed. 1992). IPI Criminal No. 3.11 provides:

> "The believability of a witness may be challenged by evidence that on some former occasion he [(made a statement) (acted in a manner)] that was not consistent with his testimony in this case. Evidence of this kind [ordinarily] may be considered by you only for the purpose of deciding the weight to be given the testimony you heard from the witnesses in this courtroom."

¶ 21    IPI Criminal No. 3.11 covers inconsistencies caused by both omissions and affirmative statements in the prior statement. *People v. Eggert*, 324 Ill. App. 3d 79, 82-83 (2001). Under the rule for impeachment by omission it is permissible to use prior silence to discredit a witness's testimony if (1) it is shown that the witness had an opportunity to make a statement and (2) the witness fails to mention a fact under circumstances that make it reasonably probable that he or she would have mentioned them if true. *People v. Clay*, 379 Ill. App. 3d 470, 481 (2008).

¶ 22    The State first responds that the issue is forfeited because the record does not contain a written version of the proposed IPI Criminal No. 3.11. We do not find that this issue is forfeited. Our supreme court held that a defendant waives his jury instruction argument if "[n]either the common law record nor the report of proceedings reveals the substance of [the] instruction." *People v. Emerson*, 189 Ill. 2d 436, 504 (2000). Here, although the instruction is not in the common law record, the record of proceedings identifies IPI Criminal No. 3.11 as the instruction defense counsel asked to be submitted to the jury during the jury instruction conference. Moreover, in denying the defendant's motion for a new trial, the trial court specifically cited to the

language in IPI Criminal No. 3.11 that defense counsel had wanted given. Thus, the record is sufficient for us to consider the defendant's appeal. See *id*.

¶ 23 Turning to the merits of the appeal, we note that this court considered a similar issue in *Eggert*, 324 Ill. App. 3d at 82. In *Eggert*, the defendant was convicted of aggravated driving under the influence of alcohol (625 ILCS 5/11-501(a)(2), (d)(1) (West 1998)) and driving while license revoked (625 ILCS 5/6-303 (West 1998)). The sole testimony presented at trial was of a police officer who testified that he observed the defendant drive his pickup truck over the lane line four or five times. The officer pulled over the truck and observed the defendant exit the vehicle. The defendant staggered and tripped several times. When the officer asked for the defendant's driver's license, the defendant responded that it had been revoked. *Eggert*, 324 Ill. App. 3d at 80.

¶ 24 As he spoke with the defendant, the officer noticed the defendant's bloodshot, glassy eyes and smelled alcohol on the defendant's breath. The defendant swayed back and forth while he stood, and he refused field sobriety tests. The officer placed the defendant under arrest for driving under the influence of alcohol. *Id.* On cross-examination, the officer acknowledged that his written report contained two omissions: (1) that he observed the defendant weaving over the lane line while driving; and (2) that the defendant refused field sobriety tests. *Id.* at 81.

¶ 25 Defense counsel subsequently tendered IPI Criminal No. 3.11 concerning the believability of a witness. The trial court refused the instruction, apparently on the basis that since the impeachment consisted of an omission, IPI Criminal No. 3.11 did not apply. *Id.* at 81-82.

¶ 26 On appeal, this court reversed and remanded for a new trial, holding that the trial court abused its discretion by refusing to give IPI Criminal No. 3.11 regarding prior inconsistent statements. We held that IPI Criminal No. 3.11 does apply to impeachment by omission if the omission pertains to a material matter. *Id.* at 82. We noted that the trial court had not addressed

whether the omissions in the officer's report were material. *Id.* Further, we found that the omissions were material because the officer's trial testimony that he observed the defendant weaving across the lane line was directly relevant to whether the defendant was capable of driving a vehicle. *Id.* Additionally, the defendant's refusal of field sobriety and breathalyzer tests was material because the jury could infer guilt due to his refusal. The officer's trial testimony that defendant was weaving and that he refused testing was therefore impeached by the omission of these observations in the police report. *Id.*

¶ 27    Here, as in *Eggert*, the trial court erred in finding that IPI Criminal No. 3.11 did not apply to impeachment by omission. As in *Eggert*, the trial court erred in not giving the instruction because the discrepancy between the police officer's report and his testimony involved a material issue. In this case, the material issue was the defendant's identity. See *People v. Rodriguez*, 312 Ill. App. 3d 920, 933 (2000) (the prosecution has the burden of proving beyond a reasonable doubt the identity of the person who committed the crime); *United States v. Armenta*, 883 F.3d 1005, 1008 (7th Cir. 2018) (the defendant's identity is nothing more or less than an element that must be established beyond a reasonable doubt). The fact that Clinton was able to describe more of the defendant's physical characteristics in his trial testimony—five months after the incident—than on the day of the incident in his report impeached his trial testimony. The trial court therefore abused its discretion in not submitting IPI Criminal No. 3.11 to the jury.

¶ 28    In so determining, we find unpersuasive the State's reliance on *People v. Miller*, 2017 IL App (1st) 143779, ¶ 40, *People v. Larry*, 218 Ill. App. 3d 658, 666-67 (1991), and *People v. Cannon*, 150 Ill. App. 3d 1009, 1018-20 (1986). In none of those cases was the omission from the police officer's report material. See *Miller*, 2017 IL App (1st) 143779, ¶ 44 (difference in police report and trial testimony was only "over semantics"); *Larry*, 218 Ill. App. 3d at 667 (concluding

that "none of the inconsistencies or omissions of which defendant complains are material to the issues of defendant's guilt"); *Cannon*, 150 Ill App. 3d at 1018-19 (information omitted by the officer's report was immaterial because the report concerned only "minor discrepancies and inconsistencies in testimony").

¶ 29    Nonetheless, although we find that the trial court erred in not giving IPI Criminal No. 3.11, we must still consider whether the trial court's failure to give that instruction was harmless. See *People v. Dennis*, 181 Ill. 2d 87, 95 (1998) (the test for harmless error in the context of an instructional error is whether the result at trial would have been different had the jury been properly instructed.). Here, although the trial court did not give IPI Criminal No. 3.11, it did give Illinois Pattern Jury Instructions, Criminal, No 1.02 (4th ed. Supp. 2009) (IPI Criminal 4th No. 1.02) and Illinois Pattern Jury Instructions, Criminal, No 3.15 (4th ed. Supp. 2009) (IPI Criminal 4th No. 3.15). IPI Criminal No. 1.02 discusses the believability of witnesses and the weight witness testimony should be given. IPI Criminal No. 3.15 sets forth factors the jury should consider when weighing identification testimony, such as: the opportunity the witness has to view the offender; the witness's degree of attention; and the witness's earlier description.

¶ 30    In *Eggert*, the trial court gave IPI Criminal No. 1.02. We held that IPI Criminal No. 1.02 was not a sufficient cautionary instruction regarding the impeachment of the State's only witness on the material issue of whether the defendant was intoxicated. See *Eggert*, 324 Ill. App. 3d at 83. This court, however, did not address whether the giving of IPI Criminal No. 3.15 would have cured the failure to give IPI Criminal No. 3.11.

¶ 31    IPI Criminal No. 3.15 expressly draws the jury's attention to the factors to consider in evaluating identification testimony. Specifically, IPI Criminal No. 3.15 instructs the jury to consider "the witness's earlier description of the offender." Here, defense counsel made the jury

aware through his cross-examination of Clinton and through his closing arguments that Clinton was able to describe more of the defendant's physical characteristics in his trial testimony—five months after the incident—than on the day of the incident in his report.

¶ 32 Based on the trial court giving IPI Criminal No. 3.15 and the evidence presented at trial, we hold that the trial court's failure to give IPI Criminal No. 3.11 did not change the outcome of the trial. Clinton identified the defendant as the driver and his description was corroborated by two other troopers. Most importantly, the defendant was observed driving the same vehicle on two separate occasions shortly after the incident in question. Accordingly, we hold the trial court's failure to give IPI Criminal No. 3.11 was harmless error.

¶ 33 In so ruling, we find the defendant's reliance on *People v. Crane*, 145 Ill. 2d 520 (1991) to be misplaced. There, the supreme court held that the trial court's failure to give a mistake of fact instruction was not harmless error where the defendant's whole case rested upon concepts of self-defense and mistake of fact and the given instructions did not expressly draw to the jury's attention the concept of mistake of fact. *Id.* at 527-28. Here, IPI Criminal No. 3.15 did draw the jury's attention to a key issue in the case—that Clinton's earlier description of the defendant was not as detailed as the description he gave at trial.

¶ 34 Turning to the defendant's second argument, the defendant argues that he was deprived of a fair trial based on improper comments that the State made during the rebuttal portion of its closing argument. Specifically, the defendant argues that the State (1) improperly shifted the burden of proof by stating that it was the defendant's fault that an identification issue existed; (2) implied that he was a liar who changed his appearance after the incident in question to confuse the troopers; and (3) attacked defense counsel's credibility.

¶ 35    The defendant acknowledges that he did not object to any of the State's allegedly improper comments at trial or raise them in a posttrial motion.  Therefore, we consider the defendant's argument under the plain error doctrine.  See *People v. Burman*, 2013 IL App (2d) 110807, ¶ 32.

¶ 36    Generally, prosecutors are afforded a great deal of latitude in closing argument.  *People v. Slabaugh*, 323 Ill. App. 3d 723, 729 (2001).  As such, the State may comment on the evidence and all reasonable inferences drawn therefrom.  *People v. Schneider*, 375 Ill. App. 3d 734, 755 (2007). A reviewing court looks at "the language used, its relation to the evidence, and the effect of the argument on the defendant's right to a fair trial" to determine whether the State's remarks were improper.  *People v. Simms*, 192 Ill. 2d 348, 396 (2000).  "In reviewing comments made at closing arguments, this court asks whether or not the comments engender substantial prejudice against a defendant such that it is impossible to say whether or not a verdict of guilt resulted from them." *People v. Nieves*, 193 Ill. 2d 513, 533 (2000).

¶ 37    Here, we do not believe that the defendant was substantially prejudiced by any of the State's comments.  The defendant first complains that the State switched the burden of proof when it argued that "We wouldn't even be here today" "[i]f the defendant pulled his vehicle over like any other law-abiding citizen."  This comment is a fair characterization of the evidence.  See *Schneider*, 375 Ill. App. 3d at 755.  Clinton testified that he attempted to pull the defendant over but the defendant did not stop.  Hence, that is why the State charged the defendant with aggravated fleeing and eluding of a police officer.

¶ 38    The defendant next complains that the State improperly argued that he changed his appearance from when the troopers originally saw him to the date of trial in order to confuse the troopers.  The defendant argues that the State's argument was improper because it implied that the defendant was a liar.  See *People v. Peters*, 2018 IL App (2d) 150650, ¶ ¶ 1, 56, 62 (improper to

refer to the defendant as a "lying liar" or to otherwise comment on his credibility when he declines to testify). We note, however, that the State never referred to the defendant as a liar. Rather, as the record reveals that the defendant did change his appearance from when the troopers first saw him to the day of trial, the State's comment was a reasonable inference to be drawn from the record. See *Schneider*, 375 Ill. App. 3d at 755.

¶ 39 Finally, we reject the defendant's arguments that the State improperly attacked defense counsel's credibility by calling substantial portions of defense counsel's closing argument a "ploy" and a "trick." Although the State may not claim that defense counsel "deliberately lied to the jury or fabricated a defense," it may challenge the defendant's credibility and the credibility and persuasiveness of the defense's theory. *People v. Robinson*, 391 Ill. App. 3d 822, 840 (2009). In challenging the credibility of the defendant or the defense theory, the State may use terms including, "ridiculous," "wacky," 'preposterous," "silly," and a "joke" to describe the defense's theory. *Id.* at 840-41.

¶ 40 Here, the defendant claims that the following comment was improper:

"Now, I am sure the defense loves making a lot of issue of this, but this is nothing but a ploy by the defense to move the spotlight from the defense, the guy on trial, to the trooper. *** Don't fall for that trick by the defense. They would love nothing more for you to go back there and just talk about Trooper Clinton the whole time and not even bring the defendant up."

¶ 41 We find that this statement, when taken in context, was not improper. The State's comments were in response to the defendant's arguments that Clinton's testimony was insufficient to convict the defendant. *People v. Glasper*, 234 Ill. 2d 173, 204 (2009) (statements will not be held improper if they were provoked or invited by the defense counsel's argument). Further, we

note that comments similar to those made by the State here have been held to be within the bounds of proper argument. See *People v. Bramlett*, 131 Ill. App. 3d 616, 620 (1985) (holding that State's comment that "Now, you know it's an old defense trick to put everybody on trial but the defendant" was not improper based on the context in which it was made).

¶ 42                                              III.  CONCLUSION

¶ 43    For the reasons stated, the judgment of the circuit court of Du Page County is affirmed.

¶ 44    Affirmed.