NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 180250-U

NO. 4-18-0250

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 21, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Vermilion County |
| TARA GREENE, | ) | No. 15CF244 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Nancy S. Fahey, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Presiding Justice Steigmann and Justice Turner concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, concluding (1) the State proved defendant guilty beyond a reasonable doubt, (2) defendant was not entitled to a "mistake of fact" jury instruction, and (3) the prosecutor's closing argument remarks were proper in all respects.

¶ 2    In May 2015, the State charged defendant, Tara Greene, by information with reckless discharge of a firearm (720 ILCS 5/24-1.5 (West 2014)), where defendant "endangered the bodily safety of an individual in that, while acting in a reckless manner, [s]he discharged a firearm[.]" Following a December 2017 trial, a jury found defendant guilty of reckless discharge of a firearm. In January 2018, defendant filed a motion for a new trial, which the trial court denied. In February 2018, the court sentenced defendant to 30 months' probation.

¶ 3    Defendant appeals, arguing (1) the State failed to prove her guilty beyond a reasonable doubt; (2) the trial court deprived her of a fair trial and the right to present her

complete defense when it refused her tendered jury instruction on "mistake of fact" where the evidence indicated she mistakenly believed the gun was unloaded before it went off; and (3) the court should grant her a new trial where the prosecutor's improper closing and rebuttal argument (a) misstated the law by arguing defendant was reckless even if the discharge was accidental and defendant thought the gun was unloaded, (b) misstated the evidence by saying multiple people, including children, were in the street when the gun went off, (c) relied on improper witness opinion testimony about what constitutes improper and unsafe unloading of a weapon, a fact for the jury to decide, and (d) disparaged the integrity of defense counsel by accusing counsel of presenting a "smoke and mirrors" defense meant to confuse the jury, inserted his own opinion, and appealed to the emotions of the jury by arguing defendant's defense was concerning and disturbing. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5            In May 2015, the State charged defendant by information with reckless discharge of a firearm (720 ILCS 5/24-1.5 (West 2014)), alleging defendant "endangered the bodily safety of an individual in that, while acting in a reckless manner, [s]he discharged a firearm[.]"

¶ 6                              A. Defendant's Jury Trial

¶ 7            In December 2017, the jury heard the following evidence.

¶ 8                                  1. *Robert Colson*

¶ 9            Robert Colson, a neighbor of defendant, testified that on May 3, 2015, around 7 p.m., he observed from his kitchen window defendant in the middle of the street waving a pistol. Specifically, Colson indicated, "She was upset. The word distraught is the only word that really describes it. She was waving the pistol around at her husband, who was also in the street on Columbia. She pointed the gun at him; she pointed it at her own head; she waved it around the

neighborhood to gesture with; put the gun in her mouth at one point; pointed it back at him when he got too close. It went on for several minutes as I called the police." Colson testified that eventually defendant and her husband moved further east down the street where he lost sight of them. Ten seconds later Colson heard a pistol shot. Colson testified that during the exchange, defendant was the only person in possession of a gun.

¶ 10                                    2. *Sergeant Eric Kizer*

¶ 11            Eric Kizer, a police sergeant for the City of Danville, testified to being dispatched on May 3, 2015, to a neighborhood for a shots fired call. Once he arrived at the scene, he spoke with Colson. After speaking with Colson, Sergeant Kizer surveyed the area and found one spent .380-caliber shell casing and three live .380-caliber rounds in the street in the 800 block of West Columbia Street. Kizer photographed and inventoried the evidence.

¶ 12            Defense counsel questioned Sergeant Kizer about unloading a firearm and asked, "When you unload a weapon, if it happened to have live rounds, for example, in the magazine or the chamber, do they stay in the weapon?" Sergeant Kizer responded, "If you unload a weapon, it depends on how you unload it and it depends if one is in the chamber or if it's a port in the magazine." Defense counsel then followed up by asking, "And so certainly, live rounds—the presence of live rounds is indicative—could be indicative of a firearm being unloaded?" Sergeant Kizer replied, "Not necessarily."

¶ 13            Sergeant Kizer wrote a police report following the incident. Sergeant Kizer testified he did not remember Colson telling him that defendant pointed the gun both at her husband and herself and his police report lacked that information. On redirect examination, Sergeant Kizer testified his police report is based on shorthand notes and not verbatim what a witness tells him.

¶ 14                                  3. *Michael Sherman*

¶ 15          Michael Sherman, a neighbor of defendant in the 800 block of Columbia Street in Danville, Illinois, testified that on May 3, 2015, around 6 p.m., he was playing video games when he heard what sounded like a firework go off.  In response to the noise, Sherman went to his front door and observed defendant and her husband, James, arguing in the street.  Sherman testified that defendant seemed "kind of frantic with her arms, she was yelling at James. You could just definitely tell they were in an argument."  Sherman observed defendant with a gun in her hand.

¶ 16          Sherman testified James "was trying to calm her down and then he got the gun from her, he went into his house, which is across the street from mine, she got into her car and she drove away."  Sherman testified he stood approximately 30 feet away from defendant and James during the argument.  Sherman also testified that a tree in front of his home did not obstruct his view of the argument.  After the incident, Sherman went upstairs to check on his children and testified he remained "in kind of shock."  Sherman testified that after the incident, he spoke with Officer Webb.

¶ 17                                  4. *Officer Joshua Webb*

¶ 18          Joshua Webb, police commander for the City of Danville, testified to being dispatched on May 3, 2015, to 808 West Columbia Street around 6 p.m. for a shots fired call. Officer Webb testified that upon arrival at the scene, no one was outside on the street.  Officer Webb eventually spoke with Sherman.

¶ 19          Officer Webb testified they located several live rounds of ammunition and one spent shell casing in the middle of West Columbia Street.  Defense counsel asked Officer Webb, "[W]hat's the process for unloading a magazine weapon?"  Officer Webb responded, "The

proper process would be to remove the magazine from the weapon, make sure the muzzle is pointed in a safe direction, and then eject the loaded or live round that would be in the chamber into your hand and then making sure that the chamber would be clear with inspection." In response, defense counsel asked Officer Webb, "Okay. So you basically move the slide, that will eject the chambered round; is that correct?" Officer Webb responded, "Yes." Defense counsel then asked Officer Webb, "Is it fair to say that the product of unloading a magazine weapon could be rounds on the ground?" Officer Webb stated, "It could be." On redirect examination, over objection by defense counsel, Officer Webb opined it was "improper" to unload a chamber in the middle of a residential neighborhood and he would not consider that a safe way to remove bullets from a firearm.

¶ 20                                  5. *Finley Johnson*

¶ 21            Finley Johnson, defendant's father, testified the Danville Police Department contacted him in 2015 concerning an incident involving defendant. Two officers visited Johnson at his home, where Johnson gave them a handgun. When presented with a picture of the handgun at trial, Johnson testified he did not recognize the handgun. Johnson testified that he gave police a handgun that he received from a guy named James whose last name he did not know.

¶ 22                                  6. *Detective Patrick Carley*

¶ 23            Patrick Carley, a detective with the Danville Police Department, testified that on May 11, 2015, he interviewed defendant regarding the incident on May 5, 2015. Detective Carley testified defendant told him "she pulled the gun out because she was going to go to the shooting range on Perrysville Road and she told [her husband] that the bullets got stuck in the chamber and she was requesting help on that. She then told me she tried to clear the chamber out

and then she pointed the gun in the air and said the words 'pow, pow' and the gun accidently went off." Defendant told Detective Carley defendant and her husband were outside when the gun went off. Defendant was not sure but thought her children had gone inside the house before the gun went off. Defendant admitted the possibility she pointed the gun at her own head or in her mouth.

¶ 24    Detective Carley testified that as part of his investigation, he received information about the location of the firearm associated with the incident. On May 11, 2015, Detective Carley went to defendant's parents' house where defendant's father, Johnson, gave Detective Carley a black and chrome .380-caliber Cobra handgun. Detective Carley inventoried the handgun along with the box it came in. Defense counsel objected to the admission of the gun based on a lack of chain of custody, but the court overruled the objection finding the objection went to weight, not admissibility. The court admitted the gun and the box into evidence.

¶ 25                    7. *Bruce Stark*

¶ 26    Bruce Stark, an evidence custodian for the Danville Police Department, testified that he sent the handgun taken from Johnson to the Illinois crime lab. Stark testified he never fired or inspected the gun to determine whether it could fire, instead he sent it to the crime lab.

¶ 27                    8. *Photographs*

¶ 28    During defendant's case-in-chief, defendant called Sergeant Kizer and Steven Blaine, an investigator with the Vermilion county public defender's office, to testify regarding photographs taken from different vantage points of the street where the incident occurred.

¶ 29                    9. "*Mistake of Fact" Jury Instruction*

¶ 30    During the jury instruction conference, defense counsel tendered jury instructions addressing mistake of fact. The first instruction stated, "A defendant's mistake as to a matter of

fact is a defense if the mistake shows that the defendant did not have the recklessness necessary for the offense charged." In response to the tendered instruction, the prosecutor stated,

"I don't understand how a mistake of fact would come into this case for a lot of reasons. One, mistake of fact is a defense to a charge that has to do with intent or knowledge. This case has to do with recklessness. So there could be an argument from the State that even if [defense counsel] presents evidence that says she negligently or it was an accident with the firearm, it doesn't—to the State that doesn't make a difference because it was still a reckless discharge in the State's opinion.

I guess I'm not sure how a matter—how a mistake of fact could be presented in a case about recklessness because reckless isn't the correct state of mind for a defense of mistake of fact. I think it's going to confuse the jury. I'm not exactly sure—in this third proposition, I think that would confuse the jury.

Furthermore, [defendant] indicated she is not going to testify, and the only evidence we have as to the testimony that this was an accident is [defendant's] testimony to the—to the officer, which, as [co-counsel] pointed out, is that she could be presenting basically to get herself out of trouble.

I did present this case in an earlier—another case, *People v. Probst*, which indicates that—that would be my further argument is that you can't use a mistake of fact when the only evidence is the

testimony of the defendant as to basically—and I don't have the citation, Judge, but I can get that for the Court, but I would argue basically two ways:

One, you can't use a mistake of fact against a recklessness charge because that's not the state of mind. It's if it's a reckless, not if she had the knowledge that the gun was loaded.

And two, the only testimony that it's a mistake at all is her own, through the officer, with no further evidence. Mr. Sherman, Mr. Colson, everyone else has talked about how she was waving the gun around. Mr. Colson indicated she was pointing it around and at others and herself, and her own testimony is the only one that brings out this issue of an accidental issue.

So I think based on all those things, Judge, I think it would be confusing to a jury and it's completely not appropriate for reckless discharge."

¶ 31    In response, defense counsel argued,

"Judge, I would just ask the instructions are given. [The prosecutor] understates the evidence. There is testimony from officers that in the course of unloading a magazine type of weapon that a round, a live round would be ejected from it. There are three live rounds found at the scene. That's circumstantial evidence, just like the State's case is entirely circumstantial without my client's statement to [Detective] Carley that she discharged the weapon.

So, Judge, I believe it is appropriate. I am asking for the mistake to be given. There is more than just—there is some evidence on the matter and that's the standard. Is there some evidence to support the instruction? Is there some evidence to support the defense? And there is Judge, in addition to my client's statement that was admitted through [Detective] Carley."

¶ 32    In response to defense counsel, the prosecutor argued,

"Judge, I think that [defense counsel] mischaracterizes the testimony of the officers. When you are unloading a weapon, only one round is ever chambered at a time. They were not—those live rounds were not taken from —from sliding the weapon back. Those were taken from the magazine. So I believe that's a mischaracterization of the testimony that was given, especially by Officer Webb, which directly points to the recklessness of those actions even if she was trying to unload a live firearm in the middle of a street in a neighborhood."

¶ 33    The court denied the mistake of fact instructions stating, "Yeah, I think you are mischaracterizing the testimony of the officer and then that leaves me with the only testimony is that of your client's statement to [Detective] Carley and I don't think that's enough."

¶ 34    10. *Closing Arguments*

¶ 35    During closing arguments, the State argued defendant's actions were reckless because she was waving a gun around at herself and her husband in a residential neighborhood with children around. According to the State, defendant, with no concern for those in the

neighborhood, discharged the gun. The State pointed out defendant admitted discharging the gun and described her conduct as reckless where she endangered her husband and others. The State reminded the jury Officer Webb testified unloading a weapon in the street is "unsafe."

¶ 36    In closing, defense counsel argued this was an unfortunate accident. Defense counsel questioned Sherman's view of the incident in considering photographs taken of the scene and Colson's testimony. Defense counsel argued the State failed to offer evidence showing the recovered gun was a properly functioning firearm. Defense counsel asserted the physical evidence, three live rounds, was consistent with defendant's statement she was trying to unload the firearm. Defense counsel maintained the State failed to prove recklessness and argued the fact the gun went off was insufficient to prove defendant acted recklessly. Defense counsel concluded by stating,

> "And so, ladies and gentlemen, I told you that this case is
> about an accident. Accidents happen. And an accident in this case
> is not reckless discharge. Sure, it might be negligent, it might have
> been something silly and dumb, but, ladies and gentlemen, that
> does not—that's not what reckless discharge means, silly and
> dumb."

¶ 37    In rebuttal, the State argued defense counsel's comments about photographs taken from different angles at the scene of the incident was "smoke and mirrors to confuse you guys on what photos were taken from which directions." The State urged the jury to decide the case based on the facts as follows,

> "Two witnesses saw what happened, they saw the
> defendant with a gun in her hand, it went off. Evidence was found

on the scene. We had three live rounds and a spent round. The gun was recovered from her father, placed into evidence. She's made statements admitting that she was there and she discharged a firearm."

¶ 38        Further, the prosecutor stated,

"Recklessness does exist in this situation. This gun went off in a neighborhood, a residential neighborhood. We can't stress that enough. You don't take a loaded weapon and wave it around in a place where people live. I mean, you want to talk about common sense? I mentioned that in opening to you all, I mentioned that in opening, if people would use common sense. And I stated to you this wasn't a pro[-]gun, this wasn't an anti-gun case, this is just a gun case. If you own a weapon or have ever operated a weapon, you clearly know that the way in which it was handled—Officer Webb's testimony—is that this was reckless unto itself in handling it like that. You never handle a weapon like that."

Defense counsel objected arguing the prosecutor mischaracterized the evidence. The prosecutor replied, "I believe Officer Webb testified he would consider that unsafe." The court overruled the objection.

¶ 39        The State argued that the middle of a street with others around was not the place to check if a weapon was loaded or not. Further, the State argued the evidence showed live rounds could have ended up on the ground if someone dropped them and that the live rounds did

not come from trying to unload the weapon where only one round can be in the chamber at a time. The State suggested it was "disturbing" that defense counsel called defendant's actions "silly and dumb[.]"

¶ 40                                11. *Jury's Verdict*

¶ 41            The jury found defendant guilty of reckless discharge of a firearm.

¶ 42                          B. Defendant's Motion for a New Trial

¶ 43            In January 2018, defendant filed a motion for a new trial. In the motion defendant argued: (1) the trial court erred in admitting the gun without adequate foundation; (2) the court erred by allowing the State to introduce undisclosed expert testimony from Officer Stark, Officer Webb, Sergeant Kizer, or Detective Carley regarding the mechanisms of firearms; (3) the court erred by not granting defendant's motion for a mistrial due to the cumulative prejudice of the State's undisclosed expert opinions; (4) the court erred by allowing an officer to testify concerning whether unloading a firearm in a particular area is safe or unsafe; (5) defendant was deprived of a fair trial when she was denied a fair opportunity to fully present closing argument where (a) the court improperly sustained the State's objection to defendant's argument about witness Sherman's credibility, (b) the court improperly sustained the State's repeated objections to defendant's argument that an accident is not a crime, (c) the court's error in sustaining the State's objection was compounded by the court's refusal to give defendant's negligence instruction, (d) defendant was prejudiced by the court's failure to tender the mistake of fact instruction, (e) the prosecutor's repeated arguments about safety and appeals to the jury to consider "what could have happened" deprived defendant of a fair trial, and (f) the court's failure to sustain defendant's objection to misstating the evidence resulted in prejudice; (6) the court should have granted defendant's motion for a directed verdict because the only reasonable

explanation for the physical evidence was the firearm discharged while defendant attempted to unload the weapon; (7) the verdict reached in under thirty minutes resulted from insufficient deliberation; and (8) the cumulative errors in the jury trial denied defendant a fair and impartial trial. Subsequently, the court denied the motion.

¶ 44                                    C. Sentencing

¶ 45          In February 2018, the court sentenced defendant to 30 months' probation.

¶ 46          This appeal followed.

¶ 47                                    II. ANALYSIS

¶ 48          On appeal, defendant argues (1) the State failed to prove her guilty beyond a reasonable doubt (2) the trial court deprived her of a fair trial and the right to present her complete defense when it refused her tendered jury instruction on "mistake of fact"; and (3) the court should grant her a new trial where the prosecutor's improper closing and rebuttal argument (a) misstated the law by arguing defendant was reckless even if the discharge was accidental and defendant thought the gun was unloaded, (b) misstated the evidence by saying multiple people, including children, were in the street when the gun went off, (c) relied on improper witness opinion testimony about what constitutes improper and unsafe unloading of a weapon, a fact for the jury to decide, and (d) disparaged the integrity of defense counsel by accusing counsel of presenting a "smoke and mirrors" defense meant to confuse the jury, inserted his own opinion, and appealed to the emotions of the jury by arguing defendant's defense was concerning and disturbing. We examine each issue, first addressing the sufficiency of the evidence.

¶ 49                          A. Sufficiency of the Evidence

¶ 50          Defendant argues the State failed to prove her guilty beyond a reasonable doubt. Specifically, defendant asserts there was no evidence showing she acted recklessly or physically

- 13 -

endangered the bodily safety of another when she accidentally discharged a firearm she thought was unloaded.  In response, the State argues the evidence proved, beyond a reasonable doubt, that defendant fired the gun recklessly and placed others in the vicinity in peril of probable harm.

¶ 51       "There is sufficient evidence to support a conviction if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *People v. Comage*, 303 Ill. App. 3d 269, 275, 709 N.E.2d 244, 248 (1999).  A reviewing court will not substitute its judgment for that of the fact finder on questions regarding the weight of the evidence and the credibility of the witnesses.  *People v. Jackson*, 232 Ill. 2d 246, 280-81, 903 N.E.2d 388, 406 (2009).  Circumstances requiring reversal include those where the credibility of witnesses is so improbable as to raise a reasonable doubt.  *People v. Mays*, 81 Ill. App. 3d 1090, 1099, 401 N.E.2d 1159, 1166 (1980).  Additionally, if the evidence is "so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt," we are constrained to reverse.  *People v. Collins*, 214 Ill. 2d 206, 217, 824 N.E.2d 262, 267-78 (2005).

¶ 52       In order to be convicted of reckless discharge of a firearm, the State had to prove defendant (1) discharged a firearm in a reckless manner and (2) endangered the bodily safety of an individual.  720 ILCS 5/24-1.5 (West 2014).

¶ 53       Here, two of defendant's neighbors testified that on May 3, 2015, they observed defendant waving a gun around while arguing with her husband in the middle of the street.  Both neighbors heard what sounded like a gun shot.  Specifically, Colson testified he observed a distraught defendant pointing a gun at herself and her husband while arguing with him in the middle of the street.  Colson testified he lost sight of defendant and her husband before he heard a pistol shot.  Sherman testified he heard what sounded like a firework go off and opened his

- 14 -

front door to find defendant and her husband in the middle of the street arguing. Sherman observed defendant with a gun in her hand and testified that she seemed "kind of frantic with her arms, she was yelling at James." Sherman also testified that nothing obstructed his view of defendant and her husband arguing in the street and that he stood about 30 feet away from defendant and James during the argument. Sherman testified his children were in his home during the argument.

¶ 54 Sergeant Kizer testified that he surveyed the area and found one spent .380-caliber shell casing and three live .380-caliber rounds in the street in the 800 block of West Columbia Street. Further, Detective Carley testified that he interviewed defendant a few days after the incident and that defendant told him "she pulled the gun out because she was going to go to the shooting range on Perrysville Road and she told [her husband] that the bullets got stuck in the chamber and she was requesting help on that. She then told me that she tried to clear the chamber out and then she pointed the gun in the air and said the words 'pow, pow' and the gun accidently went off." Defendant told Detective Carley that she and her husband were outside when the gun went off. Defendant was not sure but thought her children had already gone inside the house when the gun went off. Defendant also told Detective Carley she might have pointed the gun at her head or jokingly pointed the weapon in her mouth.

¶ 55 Detective Carley received information about the location of the firearm associated with the incident and retrieved the firearm from defendant's father. Detective Carley inventoried the handgun.

¶ 56 While defendant told Detective Carley she believed the firearm to be unloaded, both witnesses observed defendant with a handgun in the street before and after they heard a gunshot. Both witnesses observed defendant waving the gun around and pointing it at herself

- 15 -

and her husband in the middle of a street in a residential neighborhood. Also, the witnesses observed defendant's husband outside in the street with her and defendant told Detective Carley her husband was outside with her. Further, the evidence showed one spent shell casing and three live rounds were found in the middle of the street. Therefore, when viewed in the light most favorable to the State, the evidence at trial was sufficient to allow a rational trier of fact to find defendant guilty of reckless discharge of a firearm.

¶ 57     Moreover, we find the cases cited by defendant to argue she was not proven guilty beyond a reasonable doubt fail to persuade us otherwise. For example, in *People v. Olivieri*, 2016 IL App (1st) 152137, ¶ 34, 61 N.E.3d 169, the appellate court reversed the defendant's reckless discharge of a firearm conviction where the defendant fired off a round when he attempted to unload his weapon while alone inside his home. Importantly, expert testimony established the defendant failed to act recklessly in firing the weapon. Instead, the defendant discharged the weapon due to sympathetic nervous system reaction, a condition where the trigger finger squeezes the trigger and fires a round without control of the shooter. *Id.* ¶ 29. In addition, as previously mentioned, the defendant was alone in his home. Given the significant differences between the facts in *Olivieri* and those in this case, *Olivieri* provides little guidance.

¶ 58     Another case cited by defendant, *People v. Cunningham*, 2019 IL App (1st) 160709, ¶ 4, 126 N.E.3d 600, involved a defendant who shot himself inside a public housing apartment. Following a bench trial, the defendant was convicted of unlawful use of a weapon and reckless discharge of a firearm. On appeal, the appellate court reversed the reckless discharge of a firearm conviction. Supporting the reversal in *Cunningham* was the appellate court's determination that in "viewing the evidence in the light most favorable to the State, including all reasonable inferences therefrom, the evidence is insufficient to establish that [the]

- 16 -

defendant acted recklessly when he shot himself." *Id.* ¶ 33. Pointedly, the appellate court found the State presented no evidence as to how the defendant shot himself or any evidence showing "any 'acts' by the defendant from which to find the discharge of the gun was the natural product." *Id.* ¶ 32. Moreover, the appellate court determined the evidence presented at trial failed to prove, beyond a reasonable doubt, that the defendant acted recklessly where there existed in the record no facts "to reasonably infer [the] defendant consciously disregarded a substantial and unjustifiable risk to the bodily safety of an individual.*"* *Id.* ¶ 31. Tellingly, the appellate court pointed out the record lacked any evidence "to prove when the shot was fired or that any 'individual' was present in the apartment at the moment [the] defendant shot himself." *Id*. ¶ 33. Again, the facts in *Cunningham* represent a stark departure from those in this case.

¶ 59        Finally, in *People v. Moreno*, 2015 IL App (3d) 130119, ¶ 41, 29 N.E.3d 660, the appellate court reversed the defendant's reckless discharge of a firearm conviction where the defendant fired blank and live rounds into a grassy dirt area in his yard while others stood on a patio area located behind the defendant. Significant to the reviewing court was evidence the Illinois State Police use a dirt pile to absorb bullets fired at their gun range. Regarding the endangering of the bodily harm of others element, the appellate court noted the individuals behind the defendant when he fired into the dirt had virtually zero chance of being hit by a potential ricochet and distinguished the defendant's actions from someone who fires a weapon into the air which the court found involved a much more substantial risk of harm. *Id.* ¶ 44. Thus, even when considering the cases cited by defendant, we find the State submitted evidence sufficient to prove defendant guilty beyond a reasonable doubt.

¶ 60                    B. "Mistake of Fact" Jury Instruction

- 17 -

¶ 61        Defendant argues the trial court deprived her of a fair trial and the right to present her complete defense when it refused to instruct the jury on "mistake of fact" where the evidence indicated defendant discharged a firearm after she mistakenly believed the firearm was unloaded. The State argues the court correctly refused defendant's tendered jury instruction, as defendant's "mistake of fact," that her gun was unloaded, was irrelevant to the charge of reckless discharge of a firearm. Defendant preserved this claim by offering "mistake of fact" instructions at trial and including the issue in her posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988).

¶ 62        Generally, the decision to give an instruction rests in the sound discretion of the trial court. *People v. Lovejoy*, 235 Ill. 2d 97, 125, 919 N.E.2d 843, 858 (2009). However, when the issue is whether the applicable law was correctly conveyed by the instructions to the jury, the appropriate standard of review on appeal is *de novo*. *People v. Washington*, 2012 IL 110283, ¶ 19, 962 N.E.2d 902.

¶ 63        "The function of jury instructions is to provide the jury with accurate legal principles to apply to the evidence so it can reach a correct conclusion." *People v. Pierce*, 226 Ill. 2d 470, 475, 877 N.E.2d 408, 410 (2007) (citing *People v. Hopp*, 209 Ill. 2d 1, 8, 805 N.E.2d 1190, 1194 (2004)). "In a criminal case, fundamental fairness requires that the trial court fully and properly instruct the jury on the elements of the offense, the burden of proof, and the presumption of innocence." *Id.* (citing *People v. Williams*, 181 Ill. 2d 297, 318, 692 N.E.2d 1109, 1121 (1998)). "A defendant is entitled to an instruction on his theory of the case if there is some foundation for the instruction in the evidence, and if there is such evidence, it is an abuse of discretion for the trial court to refuse to so instruct the jury." *People v. Jones*, 175 Ill. 2d 126, 131-32, 676 N.E.2d 646, 649 (1997) (citing *People v. Crane*, 145 Ill. 2d 520, 526, 585 N.E.2d

99, 102 (1991)). "Very slight evidence upon a given theory of a case will justify the giving of an instruction." *Id.* at 132 (citing *People v. Bratcher*, 63 Ill. 2d 534, 540, 349 N.E.2d 31, 34 (1976)). Evidence demonstrating some foundation for the instruction may stem from the State or the defendant. *Id.*

¶ 64 "Mistake of fact is a valid defense if the mistake negates 'the existence of the mental state which the statute prescribes with respect to an element of the offense.' " *Crane*, 145 Ill. 2d at 527 (quoting Ill. Rev. Stat. 1987, ch. 38, ¶ 4-8). Mistake of fact is a defense if the mistake shows defendant did not have either the intent, knowledge, or recklessness necessary for the offense charged. Illinois Pattern Jury Instructions, Criminal, No. 24-25.24 (approved October 26, 2018) (hereinafter IPI Criminal No. 24-25.24).

¶ 65 To sustain the charge of reckless discharge of a firearm, the State was required to prove defendant (1) discharged a firearm in a reckless manner and (2) endangered the bodily safety of an individual. 720 ILCS 5/24-1.5 (West 2014). Recklessness is defined as follows,

> "A person is reckless or acts recklessly when that person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense, and that disregard constitutes a gross deviation from the standard of care that a reasonable person would exercise in the situation. An act performed recklessly is performed wantonly, within the meaning of a statute using the term 'wantonly', unless the statute clearly requires another meaning."
> 720 ILCS 5/4-6 (West 2014).

- 19 -

¶ 66        Here, defendant argues that when she discharged the firearm, she was unaware the gun was loaded and, therefore, she failed to exhibit the requisite mental state of recklessness. At trial, the State presented evidence concerning defendant's discharge of the firearm through Detective Carley. Carley testified that defendant told him "she pulled the gun out because she was going to go to the shooting range on Perrysville Road and she told [her husband] that the bullets got stuck in the chamber and she was requesting help on that. She then told Carley she tried to clear the chamber out and then she pointed the gun in the air and said the words 'pow, pow' and the gun accidently went off." On cross-examination, Detective Carley agreed defendant indicated to him that when the gun went off, defendant believed the gun was unloaded. Further, Sergeant Kizer testified he surveyed the area and found one spent .380-caliber shell casing and three live .380-caliber rounds in the street in the 800 block of West Columbia Street.

¶ 67        In support of her argument, defendant relies on *Crane*. In *Crane*, the defendant was charged with murder by knowingly or intentionally beating and burning the victim. *Crane*, 145 Ill. 2d at 524. The defendant raised a mistake of fact affirmative defense by alleging he thought the victim was already dead at the time he burned the victim. *Id.* at 526. The trial court refused the defendant's tendered jury instruction on mistake of fact. *Id.* The Illinois Supreme Court affirmed the judgment of the appellate court, which reversed the trial court and remanded for a new trial, stating:

        "Since Illinois recognizes the defense of mistake of fact,

        when this defense is supported by the evidence it is not sufficient

        to merely inform the jury of the mental state requirements, but it

        must also be informed of the validity of the mistake of fact

        defense. Since (1) defendant's whole case rested upon the concepts

- 20 -

of self-defense and mistake of fact, and (2) there exists some evidence upon which a jury could reasonably conclude that defendant burned [the victim] under the mistaken belief that he was dead, the failure to give the mistake of fact instruction to the jury cannot be considered harmless." *Id.* at 527-28.

¶ 68 The State argues defendant's reliance on *Crane* is misplaced. The State asserts that defendant's possible mistake of fact that her gun was unloaded does not defeat the mental state that she was reckless in causing her gun to discharge in the middle of the street in a residential neighborhood. The State argues that the discharge of the weapon under the circumstances was reasonably foreseeable and establishes defendant consciously disregarded the unjustifiable risk that her actions could injure someone. Further, the State argues the live rounds were not circumstantial evidence of defendant's attempts to unload her weapon.

¶ 69 Based on the evidence in the record, we find the trial court properly denied the affirmative defense instruction. This matter is distinguishable from *Crane* where the defendant burned the victim in an attempt to destroy evidence, not to kill him, because he thought the victim was dead. Thus, the mistake of fact, if believed, operated to defeat the mental state required for murder.

¶ 70 Here, defendant's belief that the weapon was not loaded fails to defeat the mental state for reckless discharge of a firearm. Specifically, when defendant, as argued by the State and accepted by the jury, wielded a loaded weapon in the middle of a residential street, pointed the weapon at her husband, and then discharged the weapon, she consciously disregarded the substantial and unjustifiable risk the gun might discharge. Critically, we look to the circumstances under which defendant formed her belief the gun was not loaded, not just her

ultimate conclusion the gun was not loaded. Fundamentally, when the required mental state is recklessness, a reckless mistake is insufficient to entitle defendant to a "mistake of fact" instruction. Thus, the trial court properly denied defendant's request for a "mistake of fact" instruction.

¶ 71                                      C. Request for New Trial

¶ 72        Next, defendant argues this court should grant her a new trial where the prosecutor's improper closing and rebuttal argument (a) misstated the law by arguing defendant was reckless even if the discharge was accidental and defendant thought the gun was unloaded, (b) misstated the evidence by saying multiple people, including children, were in the street when the gun went off, (c) relied on improper witness opinion about what constitutes improper and unsafe unloading of a weapon, a fact for the jury to decide, and (d) disparaged the integrity of defense counsel by accusing counsel of presenting a "smoke and mirrors" defense meant to confuse the jury, inserted his own opinion and appealed to the emotions of the jury by arguing defendant's defense was concerning and disturbing.

¶ 73        Prosecutors are allowed wide latitude in closing argument. *People v. Caffey*, 205 Ill. 2d 52, 131, 792 N.E.2d 1163, 1212 (2001). Moreover, closing arguments must be viewed in their entirety with the challenged remarks viewed in context. *Id.* When reviewing closing arguments, we determine whether or not the comments engender substantial prejudice against a defendant such that it is impossible to say whether or not a verdict of guilt resulted from the comments. *People v. Nieves*, 193 Ill. 2d 513, 533, 739 N.E. 2d 1277, 1286 (2000). Misconduct in closing argument is substantial and warrants reversal and a new trial if the improper remarks constituted a material factor in a defendant's conviction. *People v. Linscott*, 142 Ill. 2d 22, 28, 566 N.E.2d 1355, 1358 (1991).

¶ 74        As the State points out, defendant failed to preserve these arguments for appeal. To preserve such claims, defendant must object to the offending statements at trial and include them in a written posttrial motion. *Enoch*, 122 Ill. 2d at 186. Given the lack of preservation, defendant seeks plain-error review and consideration pursuant to an ineffective assistance of counsel claim.

¶ 75        Plain-error review allows us to consider a claim when a clear or obvious error occurs and the evidence is closely balanced, or the error is so serious that it affected the fairness of the trial and challenged the integrity of the judicial process, irrespective of the closeness of the evidence. *People v. Belknap*, 2014 IL 117094, ¶ 48, 23 N.E.3d 325. Under both prongs of the plain-error doctrine, defendant bears the burden of persuasion. *People v. Sargent*, 239 Ill. 2d 166, 190, 940 N.E.2d 1045, 1059 (2010).

¶ 76        We evaluate ineffective assistance of counsel claims under the two-prong test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). A defendant must demonstrate both deficient performance and prejudice. *Id.* at 687-88. Performance is deficient when it falls below an objective standard of reasonableness. *Id.* Prejudice occurs when there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *Id.* at 694.

¶ 77        We now turn to plain-error review and whether a clear or obvious error occurred.

¶ 78        Defendant alleges the State misstated the law by arguing defendant was reckless even if the discharge was an accident and even though she thought the gun was unloaded. Contrary to defendant's argument, where establishing intentionality is unnecessary to prove reckless discharge of a weapon, an accident may indeed constitute recklessness. Here, defendant may very well have never intended to discharge the weapon. However, because defendant's

- 23 -

actions disregarded a substantial and unjustifiable risk or the result likely to follow, she acted recklessly. When defendant waved a loaded pistol in the air and pointed the weapon at herself and her husband while standing in the middle of the street in a residential neighborhood, defendant grossly deviated from the standard of care a reasonable person would exercise in the situation. Ultimately, even if defendant's actions were accidental, they were also reckless. Thus, absent is any legal misstatement.

¶ 79    As for the State's alleged multiple misstatements asserting various people, including children, were in the street when this incident happened, we also find no error. We note that we consider the prosecutor's statements within the context of the evidence in the case. Specifically, when discussing whether defendant knew where her children were when the incident occurred, Officer Patrick Carley testified defendant "wasn't too sure. She thought that they—they were outside when she arrived, but she thought that they had gone inside the house when the gun went off." Commenting on the evidence and any reasonable inference the evidence may yield, falls within permissible argument. *People v. Howell*, 358 Ill. App. 3d 512, 527, 831 N.E.2d 681, 695 (2005). Where defendant hedged when questioned regarding the location of her children during the incident, there existed a reasonable inference the children may have been outside during the incident.

¶ 80    Moreover, for the most part, the examples cited by defendant in arguing the State misstated the evidence regarding those present during the incident are general statements describing the usual make-up and goings-on in a residential area—who was around—children in the neighborhood—everyone else in the neighborhood. Finally, arguing that conducting oneself as defendant did in a neighborhood with homes occupied by others constituted recklessness was fair game where bullets are subject to the laws of physics.

- 24 -

¶ 81 Defendant next asserts the State relied on improper witness opinion testimony regarding what constitutes improper and unsafe unloading of a weapon, a fact for the jury to decide. The State argues, as determined by the trial court, defendant opened the door to this testimony and cannot object to the introduction of evidence she invited.

¶ 82 Here, where defense counsel cross-examined Officer Webb about the process for unloading a magazine weapon and then asked whether the product of unloading a magazine weapon could be rounds on the ground, defense counsel invited the State's question regarding the appropriateness of attempting to unload a magazine in the middle of a residential neighborhood. See, *e.g.*, *People v. Simms*, 192 Ill. 2d 348, 396, 736 N.E.2d 1092, 1124 (2000) ("The prosecutor has the right to comment on the evidence and to draw all legitimate inferences deducible therefrom, even if they are unfavorable to the defendant."). Because defense counsel's question inquired about "the proper process for unloading a magazine weapon," the question implied defendant acted properly in unloading the magazine. Moreover, defense counsel's question also mentioned making "sure the muzzle is pointed in a safe direction." This opened the door for the State to question whether the "proper process of unloading a magazine" included unloading the magazine in a residential neighborhood. See *People v. Randall*, 2016 IL App (1st) 143371, ¶ 60, 64 N.E.3d 1149. Given defendant invited this evidence, the State asked a permissible question during redirect examination and properly commented on the evidence in closing argument. *Simms*, 192 Ill. 2d at 396.

¶ 83 Defendant next argues the prosecutor made improper closing and rebuttal arguments that disparaged the integrity of defense counsel by accusing counsel of presenting a "smoke and mirrors" defense meant to confuse the jury, inserted his own opinion, and appealed

to the emotions of the jury by arguing defendant's defense was concerning and disturbing. In response, the State deems the prosecutor's remarks proper in all respects.

¶ 84   As pointed out by the State, the prosecutor's remark regarding "smoke and mirrors" involved defense counsel's argument concerning what various photographs showed, not a personal attack on defense counsel. At no point did counsel suggest defense counsel lied to or attempted to trick or deceive the jury. After legitimately encouraging jurors to avoid confusion regarding multiple photographs taken from various angles, the prosecutor properly encouraged the jury to focus on the facts in the case—testimony from two eye witnesses, evidence found at the scene, a weapon retrieved from defendant's father, defendant admitting being present, and the discharge of the firearm.

¶ 85   Defendant cites multiple cases she alleges support finding the prosecutor disparaged the integrity of defense counsel. Although we decline to discuss each case in detail, we note the cases cited by defendant involve repeated egregious prosecutorial misconduct of varying types, including instances where the prosecution improperly accused defense counsel of engaging in trickery, misrepresentations, or outright lies in order to win acquittal for a client. See, *e.g.*, *People v. Starks*, 116 Ill. App. 3d 384, 394, 451 N.E.2d 1298, 1305 (1983). Such conduct did not occur in this case. Examining *People v. Kidd*, 147 Ill. 2d 510, 591 N.E.2d 431 (1992), cited by defendant, demonstrates the difference in the conduct involved in the cases cited by defendant and the matter before us. In *Kidd*, during defendant's arson trial, the prosecutor made the following argument:

> "In reality, ladies and gentlemen, the defense attorneys in this case, the real
> defense is to create as much side issues, to create as much confusion as possible
> so that when you go into the jury room, you are diverted from the real facts, the

real issues *** and you chase after all these loose ends or side issues or side defenses that [defense counsel] just tried to raise in his closing argument.

*I submit to you, ladies and gentlemen, that the defenses raised in this case are similar to a smoke screen.*

*Just as [defendant] filled this apartment building with smoke on October 28, 1980, the defense in this case is trying to fill this courtroom with smoke today.*

*Just as though those ten children ran around lost in the smoke on October 28, 1980, in that building the defense is hoping you will go in the jury room and get lost in the smoke.*

*Ladies and gentlemen, just as the smoke in this building on October 28, 1980, strangled the life out of ten children, the defense is hoping that the smoke that he raises in this room today will strangle the truth.*

\* \* \*

*I can't tell you why, so while the defense is throwing out their puffs of smoke trying to divert you,* your attention, that's exactly what they're doing, they're trying to divert your attention from the real issues that you must decide beyond a reasonable doubt.

\* \* \*

[W]hen you use your common sense and you waive [*sic*] the evidence, ladies and gentlemen, *and you cut through the smoke in this case, its been raised by the defense,* get to the issues in this the case ***.

- 27 -

And when you do that, there is only one conclusion that you folks can reach, it's going to be up to each of you twelve people to hold [defendant] responsible ***." (Emphases in original.) *Kidd*, 147 Ill. 2d at 541-42.

¶ 86 Following each statement, defense counsel objected and the trial court overruled each objection. In reversing the defendant's conviction and ordering a new trial, our supreme court pointed to the prosecutors repeated smoke screen remarks, the use of the smoke screen metaphor to inflame the passions of the jury in an already emotionally charged case, and the trial court's failure to sustain objections to the improper argument. Finally, the court condemned the prosecutor's statements as irrelevant to the defendant's guilt or innocence. *Id.* at 542. When we consider *Kidd* and the other cases cited by defendant, we are firm in finding the prosecutor's remarks in this case appropriate.

¶ 87 Lastly, defendant asserts the prosecutor appealed to the emotions of the jury by commenting that defendant's defense was concerning and disturbing. Here, defense counsel downplayed defendant's conduct suggesting an accident occurred while defendant acted in a silly, dumb, or negligent manner. This argument invited the State to respond to defense counsel's attempt to minimize the severity of defendant's conduct. See *People v. Watson*, 342 Ill. App. 3d 1089, 1093, 796 N.E.2d 1087, 1091 (2003). The prosecutor's characterization of defendant's behavior as concerning and disturbing properly challenged defense counsel's take on the facts and provided the jury with an alternative theory the jury was free to reject or adopt.

¶ 88 Given our conclusion regarding defendant's various arguments, defendant's plain-error claim fails because she cannot establish error. *Sargent*, 239 Ill. 2d at 189. Moreover, any ineffective assistance of counsel claim fails in light of our determination the prosecution's arguments were proper in all respects.

¶ 89                          III. CONCLUSION

¶ 90          For the reasons stated, we affirm the judgment of the trial court.

¶ 91          Affirmed.